Martin A. ARMSTRONG, Petitioner,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

No. 93–3077.

United States Court of Appeals, Third Circuit.

Argued Nov. 10, 1993.

Decided Dec. 21, 1993.

* As to panel rehearing only.

Christopher Lovell (argued), Christopher Lovell, P.C., New York City, for petitioner.

Pat G. Nicolette, Acting Gen. Counsel, Jay L. Witkin, Deputy Gen. Counsel, James T. Kelly, Asst. Gen. Counsel (argued) and Gracemary Rizzo, Atty., Commodity Futures Trading Com'n, Washington, DC, for respondent.

Before: GREENBERG, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Martin A. Armstrong petitions for review of a decision of the Commodity Futures Trading Commission (the "Commission") holding him individually responsible as a controlling person of corporations found to have violated Commission regulations. This court has jurisdiction to review orders issued by the Commission under 7 U.S.C. § 9 (Supp. IV 1992).

## I. Background

At age 13, Martin Armstrong began working at a coin and stamp dealership and was a millionaire in 1965 at the age of 15. After becoming the manager of his employer's store, he and a partner opened a collectors' store when he was 21. Armstrong progressed from gold coin investments to following commodity prices for precious metals. In 1973, he began publishing commodity market predictions as a hobby.

As his coin and stamp business declined ten years later, Armstrong spent more of his time on his commodity business. In 1983 Armstrong began accepting and fulfilling paid subscriptions for a commodity market forecast newsletter. His attorneys formed three corporations for the provision of commodity services: Princeton Economic Consultants, Inc. ("PEC"), Economic Consultants of Princeton, Inc. ("ECP"), and Armstrong Report, Inc. These corporations provided consulting services, seminar programs, written reports, telephone and telex newsline messages, and account management services.

In 1985, the Commission filed an administrative complaint against Armstrong, PEC, ECP, and Armstrong Report charging them with failure to register as commodity trading advisors, to deliver required disclosure documents to clients, and to maintain proper records. CFTC Docket No. 85–47. In 1987, the Commission filed a second administrative complaint charging that ECP failed to disclose a commission-sharing agreement, that PEC misrepresented hypothetical performance results and omitted a required disclaimer in advertisements, and that Armstrong was liable for ECP's and PEC's violations as a controlling person of those corporations. CFTC Docket No. 87–10. The proceedings were consolidated for hearing and decision.

The administrative law judge ("ALJ") issued an Initial Decision finding Armstrong and all three corporations liable on all counts charged in both dockets and proposing sanctions. *In re Armstrong,* [1987–1990 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 24545 (Oct. 30, 1989). After a hearing, the ALJ reaffirmed the findings of fact and conclusions of law contained in his Initial Decision and imposed the tentative sanctions. *In re Armstrong,* [1987–1990 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 24609 (Feb. 28, 1990). The sanctions banned the parties from trading for 12 months, revoked their registrations, imposed cease and desist orders, and levied civil penalties totalling $50,000.

Armstrong and the corporations appealed both the liability findings and sanctions to the Commission. They convinced the Commission that the ALJ erred by treating them as a single enterprise rather than as four discrete entities in the first complaint. *In re Armstrong,* [Current Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 25657 (Feb. 8, 1993). As a result, the Commission reversed the ALJ's finding that Armstrong was individually liable for the violations alleged in the first complaint. The Commission summarily affirmed the findings under the second complaint, including Armstrong's liability for PEC's and EPC's violations.

Armstrong and the corporations petitioned this court for review. The Commission filed a motion to dismiss on the ground that neither Armstrong nor the corporations were currently doing business in the Third Circuit as required under the jurisdictional provision of the Commodity Exchange Act. 7 U.S.C. § 9 (Supp. IV 1992). Another panel of this court dismissed the corporations' petitions for review because all have ceased doing business; it denied the motion to dismiss as to Armstrong personally. Only Armstrong's individual liability under the second complaint remains for review.

## II. Compliance with APA § 557(c)

### A. *The Commission's Opinion*

■ Armstrong complains that the Commission did not meet the requirements of the Administrative Procedure Act because it did not provide an adequate "statement of ... findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c) (1988). On questions of law, administrative judgments are generally subject to plenary judicial review. *Dill v. INS,* 773 F.2d 25, 28 (3d Cir.1985).

■ The purposes of the APA provision requiring specific findings and conclusions are to prevent arbitrary agency decisions, provide parties with a reasoned explanation for those decisions, settle the law for future cases, and furnish a basis for effective judicial review. 4 STEIN, MITCHELL & MEZINES, ADMINISTRATIVE LAW § 39.05 (June 1991). Third Circuit Court of Appeals precedent emphasizes the need for adequate findings to ensure effective judicial review and eliminate appellate speculation. *See Wensel v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor,* 888 F.2d 14, 16 (3d Cir.1989) (stating that the APA requires sufficient findings and reasoning to enable a reviewing court to understand how the ALJ reached the decision, particularly when the ALJ has rejected relevant evidence or there is conflicting probative evidence in the record); *Bethlehem Steel Corp. v. Occupational Safety & Health Review Comm'n,* 607 F.2d 1069, 1073–74 (3d Cir. 1979) (holding that, at a minimum, an ALJ's findings must provide the evidentiary basis for the legal conclusions in order to avoid appellate speculation).

■ An administrative agency need not provide an independent statement if it specif-

ically adopts an ALJ's opinion that sets forth adequate findings and reasoning. *Kenworth Trucks, Inc. v. NLRB,* 580 F.2d 55, 62–63 (3d Cir.1978). In the wake of *Vermont Yankee Nuclear Power Corp. v. Natural ·Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), our decision upon rehearing in *Kenworth* held that the NLRB was not required to separately elaborate reasons after specifically adopting the ALJ's findings and reasoning underlying a bargaining order. ·

■ No particular form of adoption is required if the agency's action permits meaningful appellate review. The Seventh Circuit has concluded that an agency order stating that "The initial decision is affirmed and the proceeding is terminated" is sufficient to indicate adoption of an ALJ's entire opinion. *City of Frankfort, Ind. v. FERC,* 678 F.2d 699, 708 & n. 18 (7th Cir.1982). The D.C. Circuit similarly accepted summary affirmance of enumerated issues by an agency in *Cities of Bethany v. FERC,* 727 F.2d 1131, 1144 (D.C.Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 293, 83 L.Ed.2d 229 (1984).

In the case before us, however, the Commission has not clearly adopted the ALJ's opinion. The Commission's entire opinion regarding the second complaint stated:

> Our review of the record and the briefs submitted by the parties establishes that the ALJ reached a substantially correct result on all the allegations raised in the Second Complaint. Because we also conclude that the parties have not raised important questions of law or policy concerning the ALJ's findings of fact and conclusions on these allegations, we affirm the Second Complaint without opinion.[2]

> [2] The ALJ's decisions shall neither be cited as Commission precedent in any Commission proceeding, nor deemed an expression of the Commission's views on the issues raised in the Second Complaint.

*In re Armstrong,* [Current Transfer Binder] Comm.Fut.L.Rep (CCH) ¶ 25657, at 40145 & n. 2.

■ Summarily affirming the ALJ's opinion as "substantially correct" is insufficient because it does not permit intelligent appellate review. *Kenworth, City of Frankfort,* and *Cities of Bethany* approved summary affirmances when the agency adopted an en-

tire opinion or specified parts of an opinion. However, the Commission's conclusion that the ALJ reached a "substantially correct" result leaves questions about which specific findings or conclusions by the ALJ were incorrect. .

The footnote disclaiming the ALJ's decision as an expression of the Commission's views further undermines the Commission's assertion before us that it adopted the entire opinion. We assume that the Commission has the power to determine which of its decisions may be cited as precedent in future proceedings before it. However, the declaration that the opinion does not represent the Commission's views erodes our confidence that the Commission carefully considered and adopted each of the ALJ's findings and conclusions as contemplated by *Kenworth.* .

■ We hold that a summary affirmance of all or part of an ALJ's opinion must leave no guesswork regarding what the agency has adopted. A decision by an ALJ that is only "substantially correct" should be fully correct by the time an agency imprints its seal of approval.

## B. *The ALJ's Opinion*

Although a remand is warranted based on the adoption issue alone, we proceed to review the Commission's and the ALJ's opinions in order to prevent an immediate return of the case to this court. *Cf. City of Frankfort,* 678 F.2d at 708 (reasoning that a remand is not justified for one finding of fact that results only in the agency officially "adopting" the ALJ's entire opinion).

### 1. *The Single Enterprise Theory*

In his Initial Decision, the ALJ concluded that Armstrong and the three corporations acted as a single enterprise. *In re Armstrong,* [1987–1990 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 24545, at 36343–45. The Commission, however, could not "endorse the ALJ's novel approach" because it was supported neither by Commission precedent nor by the complaint filed against the respondents. *In re Armstrong,* [Current Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 25657, at 40145. Because the ALJ did not assess each respondent's individual liability, the Commission undertook de novo factfinding under the first complaint. *Id.* The Commission had

already "affirmed" the ALJ's opinion regarding the second complaint and did not address whether the ALJ's alter ego theory infected the liability conclusions in that docket. *See id.*

Reversal of the ALJ's unitary approach to liability broke a critical link in the chain of reasoning that concluded that Armstrong was liable under the second complaint. Although the ALJ did not mention the single enterprise theory in his discussion of the charges under the second complaint, he also did not discuss Armstrong's actions apart from the corporations'. Read in light of the Commission's decision, the Initial Decision no longer contains a framework of findings and reasoning to support imposing sanctions against Armstrong individually.[1]

### 2. Controlling Person Liability

■ The only theory under which Armstrong was charged with individual liability in the second complaint was as a controlling person as defined in section 13(b) of the Commodity Exchange Act. This section provides:

> Any person who, directly or indirectly, controls any person who has violated ... any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

7 U.S.C. § 13c(b) (1988).

Neither the ALJ's Initial Decision nor the Commission's opinion addressed Section 13(b). As discussed above, the Administrative Procedure Act requires an adequate "statement of ... findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c) (1988). We do not understand how a statement of conclusion on a material issue of law can be adequate without mentioning the statutory provision or its language.

Section 13(b) requires at least two findings before concluding a respondent is liable as a controlling person: (1) that the respondent controlled a violator; and (2) that the controlling person did not act in good faith or knowingly induced the violation. First, the Commission contends that the ALJ's statement that Armstrong "had and exercised full domination and control over all operations of" ECP and PEC is a sufficient finding that Armstrong controlled the corporations. However, this statement was made as part of the single enterprise discussion that the Commission vacated; its continuing validity is at least subject to question. Second, the Commission's appeal brief recites evidence in the record from which the ALJ could have found that Armstrong knowingly induced the violations. Nevertheless, there is still no finding by the ALJ or the Commission that Armstrong did knowingly induce the violations. Finally, and most importantly, there is no conclusion that Armstrong is liable as a controlling person under Section 13(b). Without a conclusion that Armstrong is liable for violations with which he was charged, Armstrong may not be individually penalized.

### III. Conclusion

We hold that the Commission's opinion does not comply with Section 557(c) of the

---

1. The Commission's opinion finds that the ALJ erred by failing to assess each respondent's individual obligation under Section 4m of the [Commodity Exchange] Act.

   In light of the ALJ's error, we cannot follow our normal practice of according general deference to the presiding officer's assessment of the factual record. In order to analyze each respondent's individual liability, we have undertaken *de novo* fact-finding [regarding the charges in the first complaint] where the judge's findings are colored by his improper unitary approach....
   *In re Armstrong,* [Current · Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 25657, at 40145 (cita-tion omitted). Because we are unsure of the Commission's intended effect on the ALJ's Initial Decision, we assume it vacated the entire subsection I(A) discussing the single enterprise theory. *See In re Armstrong,* [1987–1990 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 24545, at 36343–45, paras. 7–11. On remand, the Commission is free to adopt any of the ALJ's findings of fact or reasoning that it does not believe to be "colored by [the ALJ's] improper unitary approach," to conduct further *de novo* factfinding, to remand to the ALJ, or to pursue any other proceeding it believes to be appropriate.

Administrative Procedure Act because: (1) deeming an ALJ's opinion to be "substantially correct" does not rise to the level of adoption permitted by *Kenworth;* and (2) due to the ambiguous affirmance of the ALJ's opinion by the Commission and the vacation of the single enterprise theory resulting in the absence of findings supporting and a conclusion of "controlling person" status, there are insufficient findings to hold Armstrong liable as charged under Section 13(b) of the Commodity Exchange Act. Because it will be necessary for the Commission to reconsider Armstrong's liability as it considers more specific findings, reasons, and conclusions, we do not reach the weight of the evidence issues raised by Armstrong.

The decision of the Commission will be vacated and the matter remanded to the Commission for further appropriate proceedings.