**Opinion issued October 8, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00708-CV

————————————

**STAGE STORES, INC., Appellant**

**V.**

**JON GUNNERSON, Appellee**

On Appeal from the 61st District Court
Harris County, Texas
Trial Court Case No. 2013-21878

# O P I N I O N

Following an arbitration hearing and award, Stage Stores, Inc. filed an application to vacate the arbitration award. Jon Gunnerson filed a response and an application to confirm the arbitration award. Gunnerson's application also sought the award of attorneys' fees. The trial court denied Stage's application to vacate

the arbitration award, denied Gunnerson's request for attorneys' fees, and granted the application to confirm the arbitration award. In one issue on appeal, Stage argues that the trial court erred by denying its application to vacate the arbitration award on the ground that the arbitrator exceeded her authority. In one issue on cross-appeal, Gunnerson argues that the trial court abused its discretion by denying his request for attorneys' fees.

We reverse and remand.

## Background

Stage Stores is a nationwide department store retailer with brands including "Palais Royal," "Bealls," and "Goody's." It is headquartered in Houston. Gunnerson was a senior executive for Stage for six years. In February 2010, he was promoted to Senior Vice President Director of Stores for the Houston Division. He entered into an employment contract as a part of obtaining that position.

The employment contract includes an arbitration provision, requiring the parties to submit any disputes relating to the employment contract to arbitration. Arbitration is subject to the Federal Arbitration Act ("FAA") and the rules of the American Arbitration Association. The provision does not specify a form for the arbitration award.

The contract also contains provisions for various methods of terminating the contract. One method in particular, "By the Executive for Good Reason," permitted Gunnerson to receive certain financial benefits upon termination. That method also contained certain requirements, including advance notice of the grounds supporting good reason and an opportunity to cure.

On July 2, 2012, Gunnerson submitted a resignation letter to Stage. In the letter, Gunnerson explained that he was invoking the "By the Executive for Good Reason" method for terminating the contract. Stage refused to pay the benefits available under that method. Gunnerson initiated an arbitration proceeding, challenging the refusal.

Gunnerson and Stage selected an arbitrator. After a preliminary hearing, the arbitrator issued a "Report of Preliminary Hearing and Scheduling Order." In the order, the arbitrator noted that, by agreement of the parties, the form of the award would be a "reasoned award."

In its opening argument at the hearing, Stage Stores raised the notice and cure requirements of the contract as a basis for rejecting Gunnerson's claim. During Gunnerson's testimony at the hearing, both sides questioned him about the notice and cure requirements and whether the requirements had been satisfied. In its closing argument, Stage Stores again raised the notice and cure requirements as a basis for rejecting Gunnerson's claim.

Following the hearing, the arbitrator issued an initial award. The initial award determined that Gunnerson was entitled to recover his attorneys' fees and costs, but did not identify the amount awarded. After the arbitrator issued the initial award, the parties submitted briefing on the matter of Gunnerson's fees and costs. The trial court then issued a final award.

The only difference between the initial and final awards was that the final award included the amount of fees and costs awarded. The awards are four pages in length. They contain a statement of jurisdiction, an identification of the parties, a statement of the issues, a recitation of certain procedural facts, the arbitrator's rulings, and the arbitrator's damage awards.

In the section identifying the issues under consideration, the arbitration award identifies Gunner's main argument to be that, by "restructur[ing] the Company's organization chart such that Gunnerson no longer directly reported to [the CEO] but instead to another Senior V.P. . . .[,] [Stage] materially reduced, decreased or diminished Gunnerson's nature and status within the Company, thereby providing him with good reason to resign, pursuant to paragraph 4.4.3(iii) of the Agreement." For Stage, the award identifies two of its main arguments: that Gunnerson "voluntarily elected to leave his job as a result of another job offer, and . . . the changes to the organizational structure do not rise to the level of a material reduction, decrease or diminution of his status within the organization."

4

In the rulings section, the award provides four specific rulings: (1) that a valid contract existed between the parties; (2) that Stage's "actions in restructuring the organization and removing [Gunnerson] from a direct reporting relationship to the CEO diminished [Gunnerson's] status, thereby allowing [Gunnerson] to terminate his position for good reason pursuant to paragraph 4 of the Agreement"; (3) that Gunnerson was entitled to recover attorneys' fees; and (4) that Gunnerson "failed to meet his burden of proof regarding the present value of future stock options." The arbitration award then includes the specific amount of damages awarded to Gunnerson.

Stage then filed an application to vacate the award in the trial court. Gunnerson filed a response and an application to confirm the arbitration award. In his application to confirm the award, Gunnerson requested the trial court to award him attorneys' fees because Stage's application to vacate the award was "without justification." Following a hearing, the trial court denied Stage's application to vacate the award, denied Gunnerson's request for attorneys' fees, and granted Gunnerson's application to confirm the award.

## Arbitration Award

In its sole issue on appeal, Stage argues that the trial court erred by denying its application to vacate the arbitration award.

## A. Standard of Review & Applicable Law

The dispute between the parties at arbitration concerned whether a certain provision in Gunnerson's employment agreement was satisfied. The employment agreement provided that any disputes relating to the agreement are subject to arbitration according to the FAA.

### 1. Review of Award

There are two general guiding principles of arbitration that are particularly relevant to our review here. The first is that arbitration is a matter of contract. *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). "Ultimately, arbitrators derive their powers from the parties' agreement." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). Our review of an arbitration award, then, typically focuses on whether it gives effect to the parties' contractual arbitration agreement. *See id.* at 843 n.13 ("We refer to contractual provisions regarding the scope or form of the arbitration.").

The second guiding principle is that arbitration is designed as an efficient, less-costly alternative to judicial litigation. *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The FAA

> substantiat[es] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-

consuming judicial review process, and bring arbitration theory to grief in post arbitration process.

*Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S. Ct. 1396, 1405 (2008) (internal citations and quotations omitted); *Cat Charter*, 646 F.3d at 845. As a result, judicial review of an arbitration award is extraordinarily narrow and we vacate an arbitration award only in very unusual circumstances. *See Oxford Health Plans LLC v. Sutter*, --- U.S. ---, 133 S. Ct. 2064, 2068 (2013) (holding courts only vacate arbitration award in very unusual circumstances); *Rain CII Carbon*, 674 F.3d at 471–72 (holding review of arbitration award is extraordinarily narrow). Although the parties have broad authority to modify by contract many of the standard rules for arbitration, the parties cannot expand the grounds for vacatur in judicial review. *Hall Street*, 552 U.S. at 578, 128 S. Ct. at 1400.

Instead, Section 10 of the FAA provides the exclusive grounds upon which a reviewing court may vacate an arbitration award. *Id.* at 576; *Rain CII Carbon*, 674 F.3d at 473 (citing 9 U.S.C.A. § 10 (West 2009)). Stage's application for vacatur concerns the fourth ground: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[1] 9 U.S.C.A. § 10(a)(4).

---

[1] The central dispute in this appeal is whether the arbitration award was so deficient that it failed to satisfy the parties' agreement that the award would be "reasoned." Other courts to review this issue have framed the determination of whether the arbitration award was reasoned as a question of whether the arbitration panel

7

Similarly, the parties cannot modify by contract the standard or scope of judicial review of an arbitration award. *Cat Charter*, 646 F.3d at 843 n.13 (citing *Hall Street*, 552 U.S. at 578, 128 S. Ct. at 1400). Instead, we must review the award under a number of well-established requirements that flow from the principle of maintaining the efficiency and reduced cost of arbitration. *Royce Homes*, 315 S.W.3d at 85–86; *Rain CII Carbon*, 674 F.3d at 471–72. In order to protect the strong deference accorded to arbitration awards, we review de novo the trial court's ruling to vacate or confirm an arbitration award. *Rain CII Carbon*, 674 F.3d at 472.

In contrast, our review of the underlying arbitration award is "exceedingly deferential." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007). We review a challenge to an arbitration award under a "heavy presumption" in favor of confirming the award, and we must resolve all doubts in favor of arbitration. *Cat Charter*, 646 F.3d at 842; *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002). Accordingly, a "party seeking relief under

"exceeded its authority." *See Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011); *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). We believe the better way to frame the issue of whether the arbitration award was reasoned is to ask if the award is so deficient that the arbitrator "so imperfectly executed [its powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10(a)(4) (West 2009). This is only a shift in nomenclature, however. We otherwise find the cases reviewing this issue on point and persuasive, and we apply the same principles that flow from the question of whether section 10 of the FAA was violated, regardless of the specific language in section 10 that is relied on as a basis for this determination.

8

[subsection 10(a)(4) of the FAA] bears a heavy burden. 'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" *Oxford Health Plans*, --- U.S. at ---, 133 S. Ct. at 2068 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct. 1758, 1767 (2010)). Ultimately, our review is a determination of whether the "[a]ward [is] so deficient that it warrant[s] sending the parties back to square one." *Cat Charter*, 646 F.3d at 842; *accord* 9 U.S.C.A. § 10(a)(4) (allowing vacatur when arbitrator so imperfectly executed her powers "that a mutual, final, and definite award upon the subject matter submitted was not made").

### 2. Interpretation of Parties' Agreement

The parties agreed that the arbitrator would issue a "reasoned award." The parties dispute on appeal what "reasoned award" means and whether the arbitration award was reasoned. We review de novo the trial court's interpretation on the parties' agreement for the form of the arbitration award. *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir. 2000). "[C]ourts have generally been reluctant to vacate awards challenged on the grounds that their form was improper." *Rain CII Carbon*, 674 F.3d at 473 (citing *Cat Charter*, 646 F.3d at 842 n.12).

### B. *Functus Officio* Exception

In order to fully frame the scope of our review, it is important to identify another requirement in reviewing a ruling on a challenge to an arbitration award.

"[A] court is required to enforce an arbitration award *only* as written by the arbitrator." *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003). If an arbitration award conforms to the parties' agreement, courts must confirm the award. 9 U.S.C.A. § 9 (West 2009). In contrast, we must vacate the award if the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

This is not a strictly binary determination, however. An award that is ambiguous, for example, cannot be enforced. *Brown*, 340 F.3d at 216. In that situation, "the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities." *Id.*; *accord Murchison Capital Partners v. Nuance Commc'ns, Inc.*, 760 F.3d 418, 423 (5th Cir. 2014). Once any ambiguities are resolved, the court rules on the challenge to the enforcement of the arbitration award. *See Brown*, 340 F.3d at 216.

The authority for a court to remand an ambiguity to an arbitrator for clarification is an exception to what is known as the *functus officio* doctrine. *See id.* at 219. The *functus officio* doctrine is "a common law rule that bars an arbitrator from revisiting the merits of an award once the award has been issued." *Id.* at 218. While once strictly enforced, a number of exceptions to the rule have arisen. *Id.* at 218–19. Under one exception, remand to the arbitration panel is appropriate to allow the panel to "clarify or construe an arbitration award that

seems complete but proves to be ambiguous in its scope and implementation." *Id.* at 219. Under another exception, remand to the arbitration panel is appropriate to allow the panel to "decide an issue which has been submitted but which has not been completely adjudicated by the original award." *Id.* Another exception permits a remand to "correct a mistake which is apparent on the face of [the] award." *Id.* On remand, the arbitration panel cannot retry any already resolved issues. *See id.* at 221. But the panel can complete the adjudication and clarify any existing ambiguities. *See id.*

Accordingly, if a trial court, in the course of determining an action to confirm or vacate an arbitration award, determines that the award (1) contains a mistake apparent on the face of the award, (2) is ambiguous in its scope or implementation, or (3) fails to completely adjudicate the matters raised in arbitration, then the court must remand the matter to the arbitrator for a clarification or completion of the award. *See Brown*, 340 F.3d at 216, 219; *Murchison Capital*, 760 F.3d at 423 (citing *Oil, Chem. & Atomic Workers Int'l Union, Local 4–367 v. Rohm & Haas, Tex., Inc.*, 677 F.2d 492, 495 (5th Cir. 1982)). Thereafter, the court rules on the confirmation action. *See Brown*, 340 F.3d at 216, 219; *Murchison Capital*, 760 F.3d at 423.

## C.     "Reasoned Award"

The parties agreed that the form of the award would be a "reasoned award." The parties did not provide any definition of "reasoned award" or any further detail of what constitutes a reasoned award. In its motion to vacate, Stage argued that the award was not reasoned and, accordingly, should be vacated. Gunnerson argued that the award was reasoned and, as a result, should be confirmed. The parties raise the same arguments on appeal. Accordingly, before we can determine if the award is reasoned, we must first determine what "reasoned award" means. "We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

As an initial matter, we note that the agreement for a reasoned award is not contained in the arbitration provision in Gunnerson's employment agreement. Instead, it appears in the "Report of Preliminary Hearing and Scheduling Order" from the arbitration records. The parties conducted the arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Rule R-42(b) of the then-applicable Commercial Arbitration Rules provides, "The arbitrator need not render a reasoned award unless the parties request such an award in writing *prior to appointment of the arbitrator* or unless the arbitrator

determines that a reasoned award is appropriate."[2]  AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-42(b) (2009) (emphasis added).

The same situation arose in *Cat Charter*.  The court noted that the arbitration rules permit the parties to vary the procedure established by the rules.  *Cat Charter*, 646 F.3d at 840 n.6 (citing AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-1(a)).  They can still be amended after arbitration has begun if the parties have the consent of the arbitrator. *Id.*  The court questioned whether the arbitrator was bound to deliver a reasoned award "[g]iven the deference we accord arbitrators in determining arbitral procedures."  *Id.*  Even so, the court interpreted the notation in the arbitration scheduling order "to be sufficient 'consent' within the meaning of Arbitration Rule R–1(a), and assume[d] that the parties validly altered the procedures to require a reasoned award when they subsequently communicated with the Panel."  *Id.*

Neither party argues that the arbitrator could issue anything less than a reasoned award.  Further, as we explain below, the content of the award reflects that the award provided at least some reasoning for the outcome of the award.

---

[2]  The parties' agreed to a reasoned award on October 25, 2012.  The Commercial Arbitration Rules of the American Arbitration Association were amended, effective October 1, 2013.  The same rule exists in identical form under the new rules as rule R-46(b).  *See* AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-42(b) (2013).

Accordingly, for the purposes of this appeal, we conclude that the arbitrator's notation in the scheduling order that the parties agreed to a reasoned award functions either as the consent of the arbitrator to amend the rules or as a determination by the arbitrator that a reasoned award was appropriate. *See id.*; AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-1(a), R-42(b).

Absent an agreement to the contrary, an arbitrator issues a "standard award," which simply announces a result without any reasoning or explanation. *Cat Charter*, 646 F.3d at 844. "At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make 'findings of fact and conclusions of law,' a relatively exacting standard familiar to the federal courts." *Id.*; *see also Green*, 200 F.3d at 975 (holding "'findings of fact' and 'conclusions of law' are familiar terms in legal parlance with reasonably plain meanings").

In contrast to these well-known terms, the Eleventh Circuit determined that "reasoned award" was "a somewhat ambiguous term left undefined by the FAA [and] the Arbitration Rules." *Cat Charter*, 646 F.3d at 843. As Stage recognizes, "reasoned award" has not been defined by a Texas state court.[3]

---

[3] The San Antonio Court of Appeals has, however, determined the meaning of the phrase "include a brief, written opinion addressing the issues before them" in the context of an arbitration award. *See SSP Holdings Ltd. P'ship v. Lopez*, 432 S.W.3d 487, 495 (Tex. App.—San Antonio 2014, pet. denied).

14

Nevertheless, Stage argues that "reasoned award" is "a familiar legal term. . . . defined by the Commercial Arbitration treatise and is the prevailing practice in most industrialized nations." Stage relies on two sources to support this claim. *See* 3 THOMAS H. OEHMKE WITH JOAN M. BROVINS, COMMERCIAL ARBITRATION § 118:5 (3d ed. 2003); Stephen L Hayford, *A New Paradigm for Commercial Arbitration: Rethinking the Relationship Between Reasoned Awards and the Judicial Standards for Vacatur*, 66 GEO. WASH. L. REV. 443, 444–45 (1998). Oehmke and Brovins assert, "A reasoned award would usually include a detailed listing, or at least mention, of expressions or statements offered as a justification of the arbitral decision." 3 OEHMKE, BROVINS, COMMERCIAL ARBITRATION § 118:5. They provide no authority for this assertion, however. They further assert that "a reasoned award should offer enough facts and legal principles to ascertain the reasons for the ultimate award," but the cases they rely on do not address the definition of "reasoned award." *See id.* (citing *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060 (1st Cir. 1995); *Armstrong v. Commodity Futures Trading Conm'n*, 12 F.3d 401 (3d Cir. 1993)).

Likewise, Hayford concedes that, "contrary to the prevailing practice in other industrialized countries, commercial arbitrators in the United States seldom articulate their reasons for decision in their written awards." Hayford, 66 GEO. WASH. L. REV. at 444–45. Hayford's article then argues for why "reasoned

15

awards" *should* be used in the United States, not that they are used regularly with a well-defined meaning within any U.S. jurisdiction. *Id.* at 446. Accordingly, "reasoned award" is not a "familiar legal term" within the context of U.S. arbitration proceedings, and we must still determine its meaning.

While "reasoned award" is not a "familiar legal term" in the context of U.S. arbitration proceedings, that does not mean it was without meaning at the time the parties and the arbitrator agreed that the arbitrator would issue a "reasoned award." Instead, at the time of the agreement for a reasoned award, two federal courts had defined the term, the Eleventh Circuit in *Cat Charter* and the Fifth Circuit in *Rain CII Carbon*. *Cat Charter*, 646 F.3d at 844; *Rain CII Carbon*, 674 F.3d at 473.

In *Cat Charter*, the court noted that Webster's defined "reasoned" as "'provided with or marked by the detailed listing or mention of reasons.'" 646 F.3d at 844 (quoting Webster's Third New Int'l Dictionary: Unabridged 1892 (1993)). "Reason" was defined as "'an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure.'" *Id.* (quoting Webster's Third New Int'l Dictionary: Unabridged 1891)). From these definitions, the court concluded, "Strictly speaking, then, a 'reasoned' award is an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of an act —the 'act' here being, of course, the decision of the Panel." *Id.* The court held that "a 'reasoned award

16

is something short of findings and conclusions but more than a simple result.'" *Id.* (quoting *Sarofim v. Trust Co. of the W.*, 440 F.3d 213, 215 n.1 (5th Cir. 2006)).

In *Rain CII Carbon*, the court quoted *Cat Charter* at length over the meaning of "reasoned award." 674 F.3d at 473–74 (citing *Cat Charter*, 646 F.3d at 842, 844, 846). It also recognized the court's previous holding that the detail and specificity required of a reasoned award falls between a standard award and findings of fact and conclusions of law. *Id.* at 473 (citing *Sarofim*, 440 F.3d at 215 n.1).

Because the parties did not create their own definition of "reasoned award," and because these cases represent the prevailing definition of "reasoned award" within the context of an arbitration proceeding under the FAA, we adopt the definition provided by these courts. We hold, then, that the detail and specificity required of a "reasoned award" falls between a standard award and findings of fact and conclusions of law. *Rain CII Carbon*, 674 F.3d at 473; *Cat Charter*, 646 F.3d at 844. We further hold that a "reasoned award" is "an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of . . . the decision of the Panel" or arbitrator. *Cat Charter*, 646 F.3d at 844.

Before turning to the analysis of these legal principles, it is important to emphasize that determining whether an award is a "reasoned award" is a question

of form, not substance. The scheduling order expressly stated that "reasoned award" was the parties' agreement as to the *form* of the award. Similarly, *Cat Charter* recognizes that the determination of whether an award is reasoned is a review of the form of the award. *Id.* at 844 ("Logically, the varying *forms* of awards may be considered along a 'spectrum of increasingly reasoned awards,' with a 'standard award' requiring the least explanation and 'findings of fact and conclusions of law' requiring the most. In this light, therefore, a 'reasoned award is something short of findings and conclusions but more than a simple result.'" (emphasis added; internal citations omitted)).

Accordingly, our review is limited to whether the award was in the form of a reasoned award. *See id.* We do not review whether the substance of the award is correctly reasoned or well reasoned. *See Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) ("A court sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it."); *see also Oxford Health Plans*, --- U.S. at ---, 133 S. Ct. at 2068 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.").

**D. Analysis**

A review of the award reveals that, even if the arbitrator was not completely successful, the award largely conforms to the requirements for being a reasoned award. As an initial matter, the arbitrator's award is four pages in length and contains more than just a recitation of which party wins and what the recovery is. Near the beginning of the arbitration award, the arbitrator wrote, "For the reasons set forth herein, the Arbitrator concludes that the Claimant has met his burden of proof in part, and failed to meet his burden of proof in other respects, but is entitled to the relief set out below." The award also contains a statement of jurisdiction, an identification of the parties, a statement of the issues, a recitation of certain procedural facts, the arbitrator's rulings, and the arbitrator's damage awards. This is clearly more than a standard award. But this does not establish that it was a reasoned award. *See Rain CII Carbon*, 674 F.3d at 474 ("[I]t is clear that, in eight pages, the arbitrator rendered more than a standard award, which would be a mere announcement of his decision. Thus, the remaining question is whether the arbitrator's award is sufficiently more than a standard award so as to be a reasoned award.").

In the section identifying the issues under consideration, the arbitration award summarized all but one of the parties' main arguments. The award identifies Gunner's main argument to be that, by "restructur[ing] the Company's

19

organization chart such that Gunnerson no longer directly reported to [the CEO] but instead to another Senior V.P. . . .[,] [Stage] materially reduced, decreased or diminished Gunnerson's nature and status within the Company, thereby providing him with good reason to resign, pursuant to paragraph 4.4.3(iii) of the Agreement." For Stage, the award identifies two of its main arguments: Gunnerson "voluntarily elected to leave his job as a result of another job offer, and . . . the changes to the organizational structure do not rise to the level of a material reduction, decrease or diminution of his status within the organization."

In the rulings section, the award provides four specific rulings: (1) a valid contract existed between the parties; (2) Stage's "actions in restructuring the organization and removing [Gunnerson] from a direct reporting relationship to the CEO diminished [Gunnerson's] status, thereby allowing [Gunnerson] to terminate his position for good reason pursuant to paragraph 4 of the Agreement"; (3) Gunnerson was entitled to recover attorneys' fees; and (4) Gunnerson "failed to meet his burden of proof regarding the present value of future stock options." The arbitration award then includes the specific amount of damages and attorneys' fees to which Gunnerson was entitled.

Generally, this award contains the same amount of explanation as those upheld in *Cat Charter* and *Rain CII Carbon*. In *Cat Charter*, the pertinent portion of the arbitration award consisted of six paragraphs. 646 F.3d at 840–41. Each of

20

the paragraphs summarized the claim asserted by the claimants and identified which party had prevailed "by the greater weight of the evidence." *Id.* Only one paragraph contained more detail than this. *Id.* at 841. The arbitration award then identified the total amount of money to be paid, including damages, fees, costs, and interest. *Id.* The court held that this amounted to a reasoned award. *Id.* at 845. The court noted that the determination of each claim "turned primarily on credibility determinations." *Id.* at 844. The court held that finding for one party by the greater weight of the evidence "is easily understood to mean that . . . the Panel found the Plaintiffs' witnesses to be more credible." *Id.* at 844–45. Accordingly, the award met the minimum requirements for being a reasoned award. *Id.* at 845. While the award could have provided more detail, "had the parties wished for a greater explanation, they could have requested that the Panel provide findings of fact and conclusions of law; to this court, the [explanation given in the award] is greater than what is required in a 'standard award,' and that is all we need decide." *Id.*

In *Rain CII Carbon*, the arbitration award was eight pages long. 674 F.3d at 474. The argument for vacatur "hinge[d] on the summary nature of the arbitrator's statement that, based upon all of the evidence, he found that the initial price formula should remain in effect." *Id.* The court rejected this argument because it "ignore[d] that the preceding paragraph thoroughly delineate[d] Rain's contention

21

that Conoco had failed to show that the initial formula failed to yield market price, a contention that the arbitrator obviously accepted." *Id.* The court held that vacatur in that situation would be "inconsistent with the deference owed to arbitral awards and the congressional policy favoring arbitration of commercial disputes, and is also contrary to the interest of finality." *Id.*

Nevertheless, Stage argues that the award is not a reasoned award because the arbitration award failed to address one of its key defenses: that Gunnerson failed to provide the requisite notice and opportunity to cure in order to avail himself of the good-cause termination provision. Gunnerson denies that notice and cure was one of Stage's key defenses and argues, accordingly, the arbitration award did not need to address it in order to be a reasoned award. We disagree with Gunnerson.

Stage's attorneys raised the notice and cure requirements as a defense during opening and closing statements. During his testimony at the hearing, both sides questioned Gunnerson about the notice and cure requirements and whether the requirements had been satisfied. Pursuant to the terms of the contract, giving sufficient notice and opportunity to cure was a condition of receiving the money he sought in the arbitration proceeding. Accordingly, we hold that Stage sufficiently identified and argued the matter in the arbitration proceeding and that the matter was significant enough to merit some reasoning in the award.

The dissent would have us hold that the arbitrator's failure to address this issue in the award does not prevent the award from being reasoned. Relying on *Cat Charter* and *Rain CII Carbon*, the dissent reasons that the arbitration award need only identify "issues" and not "arguments." We cannot agree with the dissent's interpretation of these cases.

In *Cat Charter*, the appellant argued that the award was not reasoned because the award only determined that the opposing party had proven its case "by the greater weight of the evidence." 646 F.3d at 844. Instead of holding the award did not need any reasoning to explain the issue, the court held that, based on the facts of the case, no further reasoning was necessary because the only matter at issue was credibility of the witnesses. *Id.* at 844–45. The necessary conclusion is that, when more than credibility of the witnesses is at issue, more reasoning is necessary. *See id.*

*Rain CII Carbon* bears this out. In *Rain CII Carbon*, the appellant complained that the award only determined that, "based upon all of the evidence, . . . the initial price formula should remain in effect." 674 F.3d at 474. The dissent to this opinion suggests that this is all that is necessary for an award to be reasoned. But the Fifth Circuit did not hold that this was all that was necessary. Instead, the court held that the greater detail needed was supplied elsewhere in the award. *See id.* ("[T]he preceding paragraph thoroughly delineates Rain's *contention* that

23

Conoco had failed to show that the initial formula failed to yield market price, a *contention* that the arbitrator obviously accepted." (Emphasis added.)). Accordingly, we find no support for the dissent's argument in the opinions on which the dissent relies.

Before determining the ramification of failing to identify and address one issue in what appears to otherwise be a reasoned award, we will address other claims for deficiencies in the award. Stage points out that, under the employment contract, Gunnerson had good cause to resign only if Stage "materially reduce[d], decrease[d], or diminishe[d]" Gunnerson's position or responsibilities. Stage claims that, while she found that Stage had diminished Gunnerson's position, the arbitrator failed to find that the diminution was material. We agree with Gunnerson that this type of argument has already been rejected in *Rain CII Carbon*. In *Rain CII Carbon*, Conoco argued that the arbitration award failed to provide sufficient reasoning in the award's simple assertion "that, based upon all of the evidence, [the arbitrator] found that the initial price formula should remain in effect." 674 F.3d at 474. The court rejected this argument, pointing out that, in making the argument, "Conoco ignores that the preceding paragraph thoroughly delineates Rain's contention . . . [which] the arbitrator obviously accepted." *Id.*

Here, the arbitration award includes a section identifying the issues presented by the parties. The award states Gunnerson's main argument was that

Stage "*materially* reduced, decreased or diminished Gunnerson's nature and status within the Company." The award further states that one of Stage's main defenses was that "the changes to the organizational structure do not rise to the level of a *material* reduction, decrease or diminution of his status within the organization."

The arbitration award, in its section identifying the rulings of the court, determined that Stage "diminished [Gunnerson's] status." Based on this, Stage would have us conclude that, after recognizing that both parties were disputing whether the changes were material, the arbitrator either (1) somehow forgot that this was a central dispute between the parties and simply determined that some diminution had occurred or (2) decided it was not material, intentionally ignored this central dispute, and decided to find in Gunnerson's favor anyway. "Such a narrow approach is inconsistent with the deference owed to arbitral awards and the congressional policy favoring arbitration of commercial disputes, and is also contrary to the interest of finality." *Id.* Reading the award as a whole, we hold that the clear, logical inference is that the arbitrator determined that the diminution in Gunnerson's status was material.

Lastly, Stage identifies two problems with the award of attorneys' fees that, it argues, shows that the arbitration award was not reasoned. First, Stage argues that the arbitrator inappropriately determined that Gunnerson was entitled to attorneys' fees in the interlocutory award when the parties had not yet submitted

25

the issue for consideration. Second, Stage argues that the final award only adds the amount of the attorneys' fees award without any explanation.

For the claim that the arbitrator prematurely decided the matter of attorneys' fees, Stage asserts that the parties "agreed that arbitration would be bifurcated. The arbitrator would decide liability first and, if Gunnerson prevailed, the parties would later submit briefing and argument about whether he was entitled to attorney's fees." Stage provides no citations to the record to support the claim that such an agreement exists, however. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to contain appropriate citations to the record); *Manon v. Solis*, 142 S.W.3d 380, 391 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding appellate court has no duty to search voluminous record without sufficient guidance from appellant to determine whether assertion of reversible error is valid). Accordingly, we have no basis for determining what the agreement between the parties actually was and what limitations the arbitrator agreed to for the initial award. Without this, we cannot determine what effect any premature ruling may have had on the final arbitration award.[4]

For the complaint that the final award only adds the amount of attorneys' fees without any explanation for the amount, Stage asserts that it argued to the

---

[4]     *But see Rain CII Carbon*, 674 F.3d at 473–74 (rejecting argument that error in initial award that was corrected in the final award can be basis for determination that award was not reasoned).

arbitrator "that the award of fees was not mandatory under the contract; that Gunnerson had not submitted any proof that the fees sought were reasonable and necessary as required by Texas law; and that Gunnerson sought recovery of fees and costs that are unavailable under Texas law." Stage complains that the final arbitration award only adds the amount of the fees awarded without specifically addressing any of its arguments.

As Stage recognizes, the final award gave Gunnerson the full amount of attorneys' fees and costs that he requested. From this simple fact, anyone reading the award must conclude that the arbitrator rejected each of Stage's arguments for why something less than the full amount could be awarded. Furthermore, this was not a central dispute between the parties. While the arbitrator considered the matter separately from the rest of the parties' dispute, the record for attorneys' fees is a mere fraction of the entire record. Gunnerson's motion for fees consisted of three pages. Stage's response consisted of ten pages. Gunnerson's reply was eleven pages. Including exhibits, the matter of attorneys' fees takes up about 140 pages of a 1,614-page record. These 140 pages include a 60-page deposition, of which, two pages were referenced in the response to the motion. If any hearing was held on the matter, it is not a part of the record. Accordingly, this does not establish any further deficiency in the award.

## E. Disposition

We have held that the award generally conforms with the requirements for an award to be reasoned but that the award's failure to provide any reasoning regarding Stage's third contention prevents a determination that the award is reasoned. We must determine, then, the ramifications of failing to identify and address this key defense. Stage argues that, because the award fails to address this third defense, we must vacate the entire award. We cannot agree.

When it is ambiguous, an award cannot be enforced but must instead be remanded back to the arbitrator for clarification under an exception to the *functus officio* doctrine. *See Brown*, 340 F.3d at 216, 218–19. Another exception applies when the award fails to completely adjudicate the matters raised in arbitration. *Id.* at 219. When an exception to the *functus officio* doctrine applies, "the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities." *Id.*; *accord Murchison Capital*, 760 F.3d at 423. Once any ambiguities are resolved, the court rules on the challenge to the confirmation of the arbitration award. *See Brown*, 340 F.3d at 216.

Here, the arbitration explicitly identified and disposed of Gunnerson's claim and two of Stage's key defenses. It failed, however, to identify and provide any amount of reasoning for ruling against Stage's defense of notice and cure. We cannot fill in this gap for the arbitrator. *See id.* We can, however, have the trial

court remand it to the arbitrator to decide an issue which was raised but not completely adjudicated by the original award. *See id.* at 219. After the arbitrator issues a revised award accounting for this deficiency, the matter will return to the trial court for final determination of whether the award should be confirmed or vacated. *See id.* at 216.

We sustain Stage's sole issue.

## Attorneys' Fees

In his sole issue on cross-appeal, Gunnerson argues that the trial court abused its discretion by denying his request for attorneys' fees. Gunnerson claims the trial court should have granted his request for attorneys' fees because Stage's challenge of the arbitration award was "without justification." *See Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 283–84 (5th Cir. 1981).

### A.    Standard of Review & Applicable Law

When a party's challenge to an arbitration award is "without merit" and its refusal to abide by the award is "without justification," a trial court can award attorneys' fees to the party seeking to confirm the arbitration award. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir. 1994) (citing *Tex. Steel*, 639 F.3d at 283). We review the trial court's ruling on the request for attorneys' fees for an abuse of discretion. *Tex. Steel*, 639 F.3d at 283. The fact that a party loses

its challenge to confirmation of the award does not establish that the challenge was "without merit." *Id.* In contrast, the fact that a challenge to the arbitration award is framed as falling within a recognized ground for vacatur does not establish that the challenge was justified. *See id.* Instead, we must determine whether the challenge, "properly characterized," is without merit. *Id.* at 284.

## B. Analysis

As an initial matter, Stage argues that the "without justification" basis for attorneys' fees only applies to arbitration in labor disputes, not arbitration proceedings in general. We disagree because the Fifth Circuit has considered this basis for attorneys' fees outside of arbitration in labor disputes. *See Executone Info. Sys.*, 26 F.3d at 1316–17, 1331 (considering "without justification" basis for attorneys' fees following arbitration between company and shareholders of merged company).

Gunnerson argues that Stage's application to vacate the arbitration award was without merit because "[i]t was a direct attack on the merits of [the arbitrator's] underlying decisions, and was based on arguments that, remarkably, were undermined by the very law Stage cited." Accordingly, Gunnerson asserts that the trial court abused its discretion by not awarding him attorneys' fees incurred in defending the application to vacate the arbitration award. Given that

we have sustained Stage's issue concerning the matter, we cannot conclude that Stage's complaints about the award are without merit.

We overrule Gunnerson's sole issue.

## Conclusion

We reverse the trial court's confirmation of the arbitration award. We remand to the trial court (1) to draft a remand to the arbitrator for clarification on the arbitrator's disposition of Stage's notice and cure defense and (2) for further proceedings upon issuance of the revised arbitration award.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Justice Brown, joining the majority and concurring.

Justice Keyes, dissenting.