

# NUMBER 13-20-00409-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAVINDERAN KRISHNAN, M.D.
AND RAVINDERAN KRISHNAN,
M.D., P.A., D/B/A THE EYE
INSTITUTE OF CORPUS CHRISTI,                                    Appellants,

v.

CHRISTOPHER MAJKA, M.D.,                                          Appellee.

On appeal from the County Court at Law No. 2
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

Appellants Ravinderan Krishnan, M.D. and Ravinderan Krishnan, M.D., P.A., d/b/a

The Eye Institute of Corpus Christi (Dr. Krishnan) appeal the trial court's judgment

stemming from an arbitration award resolving a suit brought by appellee Christopher

Majka, M.D. relating to a general partnership in a medical practice. By four issues, which we reorganize, Dr. Krishnan argues the trial court erred by: (1) awarding attorney's fees and prejudgment interest to Dr. Majka; (2) expanding the authority of the arbitrator beyond the parties' express agreement; (3) granting Dr. Majka's request to sever damages based on loss of goodwill after arbitration; and (4) entering judgment against Dr. Krishnan individually when the arbitration award was against "Ravinderan Krishnan, M.D., P.A. d/b/a Eye Institute of Corpus Christi." We reverse and render in part, vacate and dismiss in part, and affirm in part.

## I. BACKGROUND

In 1997, Dr. Krishnan, an ophthalmologist, opened a practice: "Ravinderan Krishnan, M.D., P.A.[1] [d/b/a] The Eye Institute of Corpus Christi." Fourteen years later, Dr. Krishnan hired Dr. Majka. In 2013, Dr. Krishnan and Dr. Majka executed several documents relating to Dr. Majka buying into the practice. However, unbeknownst to the parties, the documents incorrectly referred to the practice as "The Eye Institute of Corpus Christi, P.A.," an entity that was never formed. The parties' professional relationship soured, and this suit ensued.

### A. Dr. Majka's Pleadings

On October 26, 2015, Dr. Majka filed his original petition against Dr. Krishnan, individually, alleging Dr. Krishnan violated various provisions of the controlling documents for The Eye Institute of Corpus Christi, P.A. by terminating Dr. Majka's employment and

---

[1] "P.A." stands for "professional association," a particular professional entity recognized by the Texas Business Organizations Code that is reserved for various medical practices. *See* TEX. BUS. ORG. CODE ANN. § 301.003(2). A P.A. does not exist until the certificate of formation is filed with the Texas Secretary of State and takes effect. *See id.* § 3.001(c).

2

interfering with his treatment of patients. On December 4, 2015, Dr. Majka filed his first amended petition, which now included "The Eye Institute of Corpus Christi" as a plaintiff. In the first amended petition, Dr. Majka took the position that "The Eye Institute of Corpus Christi" was a general partnership because "The Eye Institute of Corpus Christi, P.A." was never officially formed.

On May 10, 2016, Dr. Majka filed his second amended petition, which included a cause of action for "Libel, Slander, and Defamation." On August 25, 2016, Dr. Majka filed his third amended petition, which removed the defamation causes of action and was otherwise near-identical to his first amended petition. Dr. Majka's third amended petition cites various Texas Business Organization Code sections relating to partnerships and partners, such as the duties of loyalty and care, partners' access to books and records, and winding up partnerships. However, Dr. Majka's third amended petition is otherwise devoid of an allegation that Dr. Krishnan breached his duties of loyalty and care.

Dr. Majka's third amended petition made the following requests for remedies:

## IX.
## Remedies

Fortunately, the TBOC provides further/additional guidance. Section 152.211 of the TBOC states:

REMEDIES OF PARTNERSHIP AND PARTNERS.

(a)     A partnership may maintain an action against a partner for a breach of the partnership agreement or for the violation of a duty to the partnership causing harm to[ ]the partnership.

(b)     A partner may maintain an action against the partnership or another partner for legal or equitable relief, including an accounting of partnership business, to: . . .

3

(2) enforce a right under this chapter, including:

(A) the partner's rights under Sections 152.201–152.209, **152.212**, and 152.213;

Obviously, this Section of the TBOC refers to Section 152.212 which states:

BOOKS AND RECORDS OF THE PARTNERSHIP.

(a) In this section, "access" includes the opportunity to inspect and copy books and records during ordinary business hours.

. . . .

(c) A partnership shall provide access to its books and records to a partner or an agent or attorney of a partner.

. . . .

## XII.
## Remedies

Plaintiffs pray for all relief allowed at law and in equity. Plaintiffs seek a 'winding up' of Plaintiffs' and Defendants' business relationship. Plaintiffs seek return of Plaintiffs' monies paid in purchase of a fifty percent business interest in a professional association, which never then existed. Plaintiffs seek reimbursement for all charges improperly made against the general partnership as are not right, just, and proper. Plaintiffs seek compensation for all risk and harm upon Plaintiffs based upon Defendants' wrongful conduct that exposes Plaintiffs to liability. Plaintiffs seek all attorneys' fees as are fair and reasonable. Plaintiffs seek those jury findings—as pleaded herein and otherwise—that void the proffered documents and agreements herein (all such agreements being subject to conditions precedent and/or subsequent that did not occur, including but not limited to the none-creation [sic] / non-existence of The Eye Institute of Corpus Christi, P.A.).

## XIV. [sic]
## Legal damages

Plaintiffs seek all just and right compensation allowed per Texas law. Plaintiffs have suffered out-of-pocket expenses and losses. Plaintiffs have suffered losses by incurring attorneys' fees. Plaintiffs have suffered and

4

seek all just and right compensation as permitted by law and in equity. For all such legal damages awarded, Plaintiffs now sue.

. . . .

## XIV. [sic]
### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Christopher Majka, M.D., and The Eye Institute of Corpus Christi (a Texas general partnership), pray that Defendant Ravinderan Krishnan, M.D., be commanded to appear and answer herein, and that an accounting be granted and allowed for the benefit of all parties (including Plaintiffs (Dr. Majka and The Eye Institute of Corpus Christi) and Defendant (Dr. Krishnan), and that a 'winding up' of The Eye Institute of Corpus Christi be supported and allowed, for all remedies allowed by Texas law, for compensatory damages and punitive damages, for pre[]judgment and post-judg[]ment interest, for attorneys' fees, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

**B.     Dr. Krishnan's Answer**

On November 4, 2015, Dr. Krishnan filed an original answer and first amended petition for declaratory judgment, petition for reformation based upon mutual mistake, and application for injunctive relief.[2] Dr. Krishnan, individually, and as "Ravi Krishnan, M.D., P.A. d/b/a The Eye Institute of Corpus Christi"[3] were included as defendants and counter plaintiffs in the answer and counterpetition. Dr. Krishnan sought a declaratory judgment "to establish whether Dr. Krishnan foreclosed on Dr. Majka's shares or Dr. Krishnan purchased Dr. Majka's shares via the Stock Option Agreement." Dr. Krishnan also sought reformation of the parties' agreement as it related to the professional association "to

---

[2] An original petition for declaratory judgment, petition for reformation based upon mutual mistake, and application for injunctive relief does not appear in the clerk's record.

[3] The entity appears in the record as both "Ravinderan Krishnan, M.D., P.A. d/b/a The Eye Institute of Corpus Christi" and "Ravi Krishnan, M.D., P.A. d/b/a The Eye Institute of Corpus Christi." Additionally, "The" appears in some uses and not others.

5

reflect the actual agreement of the parties," the sale of fifty percent of "Ravi Krishnan, M.D., P.A., d/b/a/ The Eye Institute of Corpus Christi" to Dr. Majka.

**C.      The Rule 11 Agreement**

On January 3, 2016, the parties, including "Ravi Krishnan, M.D., P.A. [d/b/a] The Eye Institute of Corpus Christi," entered into a Rule 11 agreement, effective January 1, 2016.[4] *See* TEX. R. CIV. P. 11. The agreement was filed as an exhibit to an agreed motion to vacate a temporary injunction. The Rule 11 agreement includes the following relevant provisions:

> 7.      The [p]arties agree to submit to mediation before [the arbitrator]—on or before January 11, 2015 [sic]—to equitably divide all "Eye Institute" equipment, furniture, and other assets, and the outstanding balance on the American Bank loan made to the "Eye Institute." Such equitable division shall not include any consideration of good[]will, medical records, or covenants not to compete. Should mediation fail, the [p]arties agree—within five (5) days of the failed mediation—to submit to binding arbitration before [the arbitrator] where evidence may be presented.
>
> . . . .
>
> 9.      On or before February 1, 2016, the "Eye Institute" will make an additional, one-time $185,000.00 distribution to Dr. Krishnan, in consideration of a complete, full, and final release of any and all non[]compete and non-solicitation agreements, if any, between the [p]arties.
>
> 10.     Notwithstanding the monies paid per paragraphs 8 and 9 (above), all future distributions (all distributions made after the date of this agreement) shall be on a 50/50 basis, until such time as all accounting for the "Eye Institute" is completed to year end (2015). Both [p]arties agree all billing for services provided through

---

[4] At the time of the Rule 11 agreement, Dr. Majka's first amended petition was the live pleading on file.

6

December 31, 2015[,] shall be submitted on or before Friday, January 8, 2016. Both [p]arties agree that all services rendered and payment of the same through December 31, 2015[,] shall be accounted for the "Eye Institute." All such future distributions shall be accounted for and distributed on a monthly basis.

11. The calendar year closing of the accounting books contemplated herein and final reconciliation of the Parties' interests will be subject to all normal and customary checks, balances, and audits which shall allow each [p]arties' accountants continuing access to all financial records of the "Eye Institute." Any disagreements relating to such calendar year closing of the accounting books and reconciliation of the Parties' interests will be resolved by submission to arbitration . . . .

12. Each party shall indemnify the other party for any and all potential liabilities.

The Rule 11 agreement was signed by Dr. Krishnan, Dr. Majka, and their respective attorneys. The agreement did not explicitly reserve matters for the trial court's decision or a jury trial. Further, the agreement did not specify whether arbitration was to be conducted pursuant to the Federal Arbitration Act (FAA), *see* 9 U.S.C. §§ 1–16, or the Texas Arbitration Act (TAA), *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098.

D. **Arbitration Award**

Arbitration was conducted on October 8, 9, and 17, 2018, and the "Binding Arbitration Award" was sent to the parties on December 31, 2018.[5] The award begins by noting that "Ravinderan Krishnan, M.D., P.A. d/b/a Eye Institute of Corpus Christi (Dr. Krishnan), was founded and established by Dr. Krishnan." All other references to either Dr. Krishnan, individually, or "Ravinderan Krishnan, M.D., P.A. d/b/a Eye Institute of

---

[5] At the time of arbitration, Dr. Majka's third amended petition was the live pleading on file.

7

Corpus Christi" are done by using "Dr. Krishnan." The arbitrator noted that there was no court reporter or record for the arbitration. The award included the following relevant provisions:

10. <u>Net Income Distribution—Fourth Quarter 2015</u>. Pursuant to the Rule 11 [a]greement, paragraph 10, based upon the credible evidence and financial exhibits tendered, by both parties, with the input of Gary Pearce, CPA, **the Arbitrator awards Dr. Majka $157.243.00.**

. . . .

12. <u>Reconciliation of Business Distributions—September 1, 2013 through September 30, 2015</u>. Dr. Majka, by and through his attorney, submitted extensive evidence[] in the form of oral testimony and financial exhibits, concerning reconciliation of business distributions for the time period of September 1, 2013 through September 30, 2015. The amount requested by Dr. Majka was approximately $360,779.90. However, as explained later in this Binding Arbitration Award, such was not considered pursuant to the Rule 11 [a]greement. **Thus, the Arbitrator made no award concerning same.**

. . . .

15. The Rule 11 [a]greement did not refer to pre[]judgment interest. Therefore, any pre[]judgment interest would not be within the "scope" of the arbitration jurisdiction. If there is any pre[]judgment interest, it would be consideration for the Presiding Judge in the entry of the Final Judgment. **Thus, no award of pre[]judgment interest.**

16. The Rule 11 [a]greement did not refer to attorney's fees. Therefore, any attorney's fees would not be within the "scope" of the arbitration jurisdiction. If there are any attorney's fees, it would be consideration for the Presiding Judge in the entry of the Final Judgment. **Thus, no award of attorney's fees.**

. . . .

18. <u>Arbitration "Scope"—Jurisdiction</u>. The Arbitrator was provided with

the Rule 11 [a]greement, executed on January 3, 2016[,] and filed of record. The Rule 11 [a]greement has been utilized during the arbitration trial and more specifically so the Arbitrator can stay within the "scope" of such Rule 11 [a]greement and maintain the appropriate "arbitration jurisdiction". Dr. Majka, by and through his attorney, has presented evidence and has argued that there are amounts [owed to] Dr. Majka as a result of reconciliation financial figures relating to the business distributions during the time period from September 1, 2013 through September 30, 2015. Unfortunately, the Arbitrator's reading of the Rule 11 [a]greement and more specifically paragraph 11 do not include 2013 and 2014 which would be outside the "scope" and the "arbitration jurisdiction". As a result, no award has been rendered in relation to such request. However, if there is a subsequent Rule 11 [a]greement, executed by the parties['] attorneys agreeing to same, or alternatively, a court ruling by the Presiding Judge . . . then this Arbitrator will reconsider same accordingly. Thus, the Arbitrator reserves such right if it should become an issue presented to the Arbitrator at a later date.

In addition, Dr. Krishnan, by and through his attorney, filed a "Petition for Declaratory Judgment and Motion to Stay Arbitration Proceedings". Although this was presented to the Presiding Judge, . . . she recused herself. Therefore, this legal issue was never ruled upon and any such Order, relating to same, entered of record. The Arbitrator did not have the appropriate "arbitration jurisdiction" to rule on same and it was not a part of this Binding Arbitration Award.

. . . .

20. **All relief requested by either Dr. Majka or Dr. Krishnan, in relation to the Rule 11 Agreement, and more specifically the arbitration that has not been granted is hereby denied.**

Both parties subsequently filed applications for partial modification or correction of the arbitrator's award. Dr. Krishnan sought to reduce the portion of the arbitration award dividing the business's bank account between the parties. Dr. Majka sought to increase his award for "equipment, furniture[,] and other assets."

9

Dr. Majka subsequently filed a "Petition for Declaratory Judgment on Arbitration Jurisdiction," asking the trial court to declare that the arbitrator had the authority to "make awards for a just and fair reconciliation of the Parties' interests for the time period September 1, 2013[,] through September 30, 2015." Dr. Krishnan responded with his own petition for declaratory relief, objecting to Dr. Majka's request, arguing that the Rule 11 agreement did not contemplate a recalculation of past distributions, but only allows for a reconciliation of future distributions. Both parties asserted they were "entitled to a construction of the Rule 11 Agreement" pursuant to the Texas Civil Practice and Remedies Code §§ 37.003–.004. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003–.004 (permitting a party to seek a declaration of rights and remedies under a written contract).

Thereafter, Dr. Krishnan, individually, and as "Ravi Krishnan, M.D., P.A. d/b/a The Eye Institute of Corpus Christi," filed an application to vacate the arbitration award and set it aside in its entirety. Dr. Krishnan argued that the parties' apparent disagreement as to the substance and effect of the Rule 11 agreement demonstrates that there was "a failure of the meeting of the minds in forming and executing the Rule 11 Agreement, therefore nullifying any authority to arbitrate or delegated to the arbitrator."

On September 16, 2019, the trial court granted Dr. Majka's petition for declaratory judgment, finding that the scope of the Rule 11 agreement was "inclusive of the time period beginning September 1, 2013[,] through September 30, 2015."

The arbitrator issued a "Second Supplemental Binding Arbitration Award" which included an award to Dr. Majka for a reconciliation of business distributions between

10

September 1, 2013, and September 30, 2015, in the amount of $360,779.90.[6] The second supplemental award also included the following:

3. Pre[]judgment Interest. All claims for pre[]judgment interest are hereby denied.

4. Attorney's Fees. All claims and/or requests for attorney's fees requested by the parties are hereby denied.

On July 27, 2020, Dr. Majka moved for entry of judgment against "Ravinderan Krishnan" in conformity with the arbitration awards. Dr. Majka also sought an award of reasonable and necessary attorney's fees and certain prejudgment interest. Dr. Majka's motion requested that the trial court enter a judgment in the amount of $1,091,093.68 as reflected in the amount awarded to Dr. Majka.

On August 24, 2020, Dr. Krishnan filed his response to Dr. Majka's motion for entry of judgment as well as his own request for entry of final judgment. Dr. Krishnan objected to Dr. Majka's requested judgment, arguing the Rule 11 agreement's indemnification clause required a take-nothing judgment. According to Dr. Krishnan, the arbitrator specifically denied any and all claims for prejudgment interest and attorney's fees in his supplemental award. In the alternative, Dr. Krishnan argued "there [was] no legal basis for the award of attorney['s] fees in this matter." Dr. Krishnan also requested the trial court issue a single judgment that reflected the amounts awarded to Dr. Majka as well as the amounts awarded to Dr. Krishnan, which amounted to $230,139.55. On August 26, 2020, Dr. Krishnan filed an amended response and request for entry of judgment, now arguing

---

[6] The exact date of the second supplemental award is not in the record. Further, there is no first supplement award in the record, either.

11

the award was solely against "Ravinderan Krishnan, M.D., P.A., d/b/a Eye Institute of Corpus Christi."

**E.    Trial Court's Judgment**

On August 26, 2020, Dr. Majka filed his fourth amended petition, immediately followed by a supplemental petition. Dr. Majka's fourth amended petition excluded "The Eye Institute of Corpus Christi" as a plaintiff but is otherwise identical to his third amended petition. In his supplemental petition, Dr. Majka, for the first time, specifically sought "remedies/legal damages recoverable to [him] for his loss of 'good[]will.'" According to Dr. Majka's supplemental petition, the Rule 11 agreement specifically carved out an award for goodwill for future determination outside of arbitration. The supplemental petition was otherwise identical to Dr. Majka's fourth supplement petition. Dr. Majka filed a motion to sever loss of goodwill damages from the remainder of the causes of action, which the trial court granted.

The trial court entered a judgment on the arbitration award on September 1, 2020. The judgment awarded Dr. Majka a total of $861,739.65 as "the net amount owed by [Dr.] Krishnan to [Dr.] Majka after consideration of all claims and counter-claims (including offsets) ruled upon by and within the arbitration jurisdiction." The trial court also awarded Dr. Majka $260,595.00 as prejudgment interest. Finally, the trial court awarded Dr. Majka $146,800.00 for attorney's fees incurred, an additional $30,000.00 for conditional appellate attorney's fees for an appeal, and $20,000.00 for conditional appellate attorney's fees for an appeal to the Texas Supreme Court. The judgment was against Dr. Krishnan, individually. This appeal followed.

12

## II. SCOPE OF ARBITRATION

## A. Standard of Review and Applicable Law

### 1. Rule 11 Agreements

A trial court may enforce an agreement between the parties to a suit if the agreement is writing, signed, and filed with the court or otherwise made in open court. TEX. R. CIV. P. 11. To be effective, the agreement must be "complete within itself in every material detail" and contain "all of the essential elements of the agreement." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (per curiam). "Essential or material terms are those terms that the parties 'would reasonably regard as vitally important elements of their bargain.'" *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi– Edinburg 2013, no pet.) (quoting *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "As long as the parties agree as to the essential or material terms of a contract, the agreement may leave other non-essential provisions open for future adjustment and agreement." *Id.* "Whether a term forms an essential element of a contract depends primarily upon the intent of the parties." *Id.* (quoting *Domingo v. Mitchell*, 257 S.W.3d 34, 40–41 (Tex. App.—Amarillo 2008, pet. denied)).

"Litigants' Rule 11 agreements are contracts relating to litigation, and thus we construe them under the same rules as a contract." *Shamrock*, 540 S.W.3d at 560. "We do not give a Rule 11 agreement greater effect than the parties intended." *Id.* at 560–61. "If a contract can be given a certain or definite legal meaning or interpretation, it is not

13

ambiguous and we construe it as a matter of law." *Id.* at 561 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Accordingly, we conduct a de novo review. *Robinson v. Home Owners Mgmt. Enters.*, 590 S.W.3d 518, 525 (Tex. 2019). When interpreting a Rule 11 agreement, we consider the "language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues." *State Farm Lloyds v. Gulley*, 399 S.W.3d 242, 246–47 (Tex. App.—San Antonio 2012, no pet.). "Courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (citing *Coker*, 650 S.W.2d at 393). "We presume that the parties to a contract intend every clause to have some effect." *Id.* (citing *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983)).

### 2. Scope of Arbitration

"A trial court's interpretation concerning the scope of a contract's arbitration clause is reviewed under a *de novo* standard." *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.). "To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding)). "Once a valid agreement to arbitrate is established, the burden to show that a claim falls outside the scope of the arbitration provision lies with the party that opposes arbitrating the dispute." *Id.* at 884–85. "[A]ny doubts concerning the scope of arbitrable issues should

be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (quoting *In re Serv. Corp. Intern.*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding) (per curiam)). "The presumption in favor of arbitration is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (cleaned up).

## B.    Analysis

By what we construe as his first and second issues, Dr. Krishnan complains that the trial court erred by (1) awarding Dr. Majka prejudgment interest and attorney's fees; and (2) impermissibly expanding the arbitrator's authority under the Rule 11 agreement to include settlement of past partnership distributions. Before we can resolve these issues, we must first determine the scope of arbitration under the parties' Rule 11 agreement. In doing so, we consider the "language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues." *Gulley*, 399 S.W.3d at 247. We further recognize that public policy requires "doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration." *Henry*, 551 S.W.3d at 115.

We begin by noting that Dr. Majka's first amended petition was the live pleading at the time of the parties' agreement. The parties signed the agreement "on the eve of trial." Neither Dr. Majka's first amended petition, nor his subsequent amended petitions, clearly identify what cause or causes of action he pleaded. *See Kinder Morgan SACROC, LP v.*

*Scurry County*, 622 S.W.3d 835, 850–51 (Tex. 2021) ("[P]laintiff's pleadings must be adequate for the court to be able, *from an examination of the plaintiff's pleadings **alone***, to ascertain with reasonable certainty and without resorting to [outside sources] the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment."). Although Dr. Majka quoted various Texas Business Organization Code sections, he did not directly allege that Dr. Krishnan breached his duties of loyalty or care, nor include the elements of such causes of action.[7] *See id.* The only causes of action we can adequately identify with reasonable certainty from Dr. Majka's pleadings are for winding up the business and for accounting. *See* TEX. BUS. ORG. CODE ANN. §§ 11.001–.059 (winding up of a domestic entity), 11.301–.315 (judicial winding up and termination), 152.211–.212 (remedies of partners and access to books and records).

The fact that the parties entered the Rule 11 agreement on the day prior to a jury trial, without specifically reserving any matters for either the trial court or a jury, supports an inference that the parties intended the agreement to encompass all pending matters. *See Gulley*, 399 S.W.3d at 247. Further, the provisions of the Rule 11 agreement support the interpretation that Dr. Majka primarily sought a winding up of the partnership, including a division of its assets, and reconciliation of the partnership interests. *See id.* We construe the Rule 11 agreement, consistent with the circumstances surrounding the agreement, such that the parties intended to resolve all remaining disputes and leave the remainder

---

[7] Dr. Majka's original petition did allege that Dr. Krishnan breached a contract and his fiduciary duties as a partner; however, these same allegations do not appear in his subsequent pleadings.

16

to arbitration. *See id.* Anything not included in the arbitration language was thus abandoned or otherwise disposed. *See id.*

### 1.    Attorney's Fees and Prejudgment Interest

Dr. Majka argues that because the Rule 11 agreement did not expressly contemplate attorney's fees and prejudgment interests, the parties intended the trial court to rule on them. Dr. Majka correctly notes that the Rule 11 agreement did not grant authority for the arbitrator to consider any award of prejudgment interest or attorney's fees but does not identify a provision that reserves them for the trial court. Rather, Dr. Majka argues the support for such a conclusion rests in the arbitration award wherein the arbitrator determined he did not have the authority "but rather left these issues to the presiding judge." Without pointing to a specific statute or pleading, Dr. Majka makes a general assertion that Chapters 37 and 38 of the Texas Civil Practice and Remedies Code support the trial court's rulings.[8]  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (dealing with declaratory judgments); *id.* §§ 38.001–.006 (dealing with when a party may recover attorney's fees).

After reviewing Dr. Majka's pleadings on file at the time the parties entered into the Rule 11 agreement, we find no cause of action that supports an award of attorney's fees. *See id.* § 37.008; *id.* § 38.001 (setting out causes of action for which a party may recover attorney's fees). Nor do we find support of a cause of action that supports prejudgment interest. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507,

---

[8] At the hearing on Dr. Majka's motion for entry of judgment, Dr. Krishnan noted that "there's no provisions for attorney's fees based on any of the pleadings," including a breach of contract claim. Dr. Majka did not provide the trial court with a statutory basis for attorney's fees at trial.

17

528 (Tex. 1998); *see, e.g.*, TEX. FIN. CODE ANN. § 304.102 (allowing prejudgment interest for wrongful death, personal injury, or property damage); § 304.201 (allowing prejudgment interest in condemnation suits). Thus, Dr. Majka would only be entitled to prejudgment interest based on general principles of equity.[9] *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 528.

Considering the pleadings on file at the time of the agreement, the nature of the dispute, the timing of the Rule 11 agreement, the specific language in the agreement, and public policy considerations favoring arbitration, we conclude the parties did not reserve the issues of attorney's fees or prejudgment interests for the trial court. *See Henry*, 551 S.W.3d at 115 (directing courts to construe doubts about the scope of arbitration in favor of arbitration); *Gulley*, 399 S.W.3d at 247. Dr. Majka's pleadings at the time of the Rule 11 agreement did not include any statutory basis for either attorney's fees or prejudgment interests. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011; *id.* §§ 38.001–.006; *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 528. Further, no evidence of the parties' disputes was presented to the trial court; therefore, the trial court did not have an equitable basis for making such an award.[10] *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 528. Accordingly, we conclude the trial court erred by awarding Dr. Majka both prejudgment interest and attorney's fees. *See Robinson*, 590 S.W.3d at 525; *Gulley*, 399 S.W.3d at 247. Dr. Krishnan's first issue is sustained.

---

[9] Dr. Majka has not identified, either with the trial court or on appeal, what cause of action or statute would entitle him to prejudgment interest.

[10] Neither party submitted evidence to the trial court regarding prejudgment interest, and neither party presented a transcript of the arbitration for the trial court, or this Court, to consider.

## 2. Past Distributions

For our analysis regarding whether the Rule 11 agreement included reconciliation of past partnership distributions, we note the following provision from the agreement:

11. The calendar year closing of the accounting books contemplated herein and *final reconciliation* of the Parties' interests will be subject to all normal and customary checks, balances, and audits which shall allow each Parties' accountants continuing access to *all financial records* of the "Eye Institute." Any disagreements relating to such calendar year closing of the accounting books and reconciliation of the Parties' interests will be resolved by submission to arbitration . . . .

(Emphasis added). Dr. Krishnan argues that the Rule 11 agreement "only allow[ed] for the reconciliation of the fourth quarter of 2015." Dr. Krishnan argues that the paragraph in question does not expressly include reconciliation of the distributions for 2013 and 2014. While it is true that the paragraph does not expressly include 2013 and 2014, it also does not expressly limit reconciliation to the last quarter of 2015. Rather, the paragraph contemplates access to *all financial records* and *final reconciliation* of the parties' interests. *See Gulley*, 399 S.W.3d at 247. ("We presume that the parties to a contract intend every clause to have some effect."). Further, the paragraph utilizes the words "calendar year" rather than "quarter" or a specific year, such as 2015. *See id.* Dr. Majka specifically requested an accounting of the parties' interests from the partnership in his petition, and the parties' dispute originated from Dr. Majka's belief that Dr. Krishnan was not issuing the correct distribution amounts for the year 2013-2015. *See id.*

We conclude the trial court did not err in concluding past distributions fell within the scope of arbitration. *See id.* Dr. Krishnan's second issue is overruled.

19

## III. SEVERANCE

By his third issue, Dr. Krishnan asserts the trial court improperly severed Dr. Majka's late-filed request for damages for loss of goodwill.

### A. Standard of Review and Applicable Law

#### 1. Severance

A trial court's decision to sever a claim is reviewed for abuse of discretion. *H.E. Butt Grocery Co. v. Currier*, 885 S.W.2d 175, 176 (Tex. App.—Corpus Christi–Edinburg 1994, no writ) (per curiam) (citing *Guaranty Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990)). "Trial courts possess broad discretion in severing and proceeding separately with '[a]ny claim against a party.'" *Id.* (quoting TEX. R. CIV. P. 41).

"Any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. "Severance of a claim is proper if [(]1) the controversy involves more than one cause of action; [(]2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and [(]3) the severed claim is not so interwoven with the remaining action that it involves the same facts and issues." *Currier*, 885 S.W.2d at 176. An order of severance that does not address a "claim" that may be severed is invalid. *Id.* at 177. A "claim" in this context is synonymous with "cause of action." *See id.* (holding severance was improper and invalid where the trial court severed discovery orders and sanctions, but the underlying "claim" was negligence); *see also McGuire v. Commercial Union Ins. Co. of N.Y.*, 431 S.W.2d 347, 351 (Tex. 1968) ("[Rule 41] refers to a claim which is a severable part of a controversy which involves more than one cause of action."). The controlling reasons to allow a severance are "avoiding prejudice, doing

20

justice, and increasing convenience." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007).

### 2. Loss of Goodwill

Goodwill is defined as: "the advantage or benefits which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant and habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

*Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777–78 (Tex. 2011) (quoting *Taormina v. Culicchia*, 355 S.W.2d 569, 573 (Tex. App.—El Paso 1962, writ ref'd n.r.e.)). Loss of goodwill is a measure of damages, not an independent cause of action. *See, e.g.*, *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (considering loss of goodwill under "irreparable harm" prong of a right to injunctive relief, not under "cause of action" prong); *Lifeguard Benefit Servs., Inc. v. Direct Med. Network Sols., Inc.*, 308 S.W.3d 102, 111 (Tex. App.—Fort Worth 2010, no pet.) (same); *Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 334 (Tex. App.—Austin 2009, pet. denied) (same). Damages for loss of goodwill are special damages that must be specifically pleaded. *See Tex. & Pac. Ry. Co. v. Mercer*, 90 S.W.2d 557, 559 (Tex. [Comm'n Op.] 1936); *Sw. Bank & Tr. Co. v. Exec. Sportsman Ass'n*, 477 S.W.2d 920, 928 (Tex. App.—Dallas 1972, writ ref'd n.r.e.); TEX. R. CIV. P. 56.

Although there is no fixed standard for measuring damages to goodwill, "opinions as to the amount of good[]will damages must at least 'be based on objective facts, figures

or data from which the loss of good[]will may be ascertained.'" *Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d 17, 29 (Tex. App.—Texarkana 2018, pet. denied) (quoting *Auburn Invs., Inc. v. Lyda Swinerton Builders, Inc.*, No. 04-08-00067-CV, 2008 WL 2923643, at *4 (Tex. App.—San Antonio July 30, 2008, no pet.) (mem. op.)). Unsupported opinion testimony or speculation are insufficient to prove damages to goodwill. *See Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 712 (Tex. 2016) ("Damage estimates, however, cannot be based on sheer speculation.").

**B.      Analysis**

Dr. Krishnan argues that the parties intended to exclude damages for loss of goodwill as evidenced by its exclusion from the Rule 11 agreement. Dr. Majka, in turn, argues that the exclusion of damages for loss of goodwill is evidence that the parties agreed for the trial court to determine this amount. We look to the "language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues." *Gulley*, 399 S.W.3d at 247.

Although Dr. Majka generally pleaded "for all remedies allowed by Texas law," he did not specifically plead for damages for loss of goodwill until more than four years after the Rule 11 agreement was entered and more than two years after arbitration. Because loss of goodwill is a form of special damages, it must be specifically pleaded. *See Mercer*, 90 S.W.2d at 559; TEX. R. CIV. P. 56. Additionally, loss of goodwill is a measure of damages, not an independent cause of action. *See Intercontinental Terminals Co., LLC*, 354 S.W.3d at 895. Further, although the Rule 11 agreement excluded goodwill from

22

arbitration, it did not reserve it for the trial court or a jury. The medical records and noncompete agreement were similarly excluded from arbitration but were not reserved for trial—they were disposed of through the agreement. Accordingly, we conclude the Rule 11 agreement did not reserve loss of goodwill damages for the trial court, and loss of goodwill is not a severable claim. *See Currier*, 885 S.W.2d at 176; *see also* TEX. R. CIV. P. 46. As such, the trial court's order severing damages for loss of goodwill is invalid. *See Currier*, 885 S.W.2d at 177. Dr. Krishnan's third issue is sustained.

## IV.    JUDGMENT AGAINST DR. KRISHNAN

By his fourth issue, Dr. Krishnan argues the trial court improperly modified the arbitrator's award by entering judgment against him individually, as opposed to "Ravinderan Krishnan, M.D., P.A. [d/b/a] The Eye Institute of Corpus Christi." When construing an arbitration award, we focus on whether the award gives effect to the parties' contractual arbitration agreement. *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 854 (Tex. App.—Houston [1st Dist.] 2015, no pet.). If an arbitration award is ambiguous, we may remand the matter to the arbitrator for clarification. *Id.* at 855–56. Our review of the trial court's ruling to affirm or vacate an arbitration award is de novo. *Id.* at 855.

According to Dr. Krishnan, "the [arbitrator's] award and supplemental award were against Ravinderan Krishnan, M.D., P.A. [d/b/a] Eye Institute of Corpus Christi." Dr. Krishnan does not identify the specific language or provision which he alleges limits the award *against* "Ravinderan Krishnan, M.D., P.A. [d/b/a] The Eye Institute of Corpus Christi." Nor do we find any. Presumably, Dr. Krishnan's argument stems from the introduction of the arbitration award which states:

23

Ravinderan Krishnan, M.D., P.A. d/b/a Eye Institute of Corpus Christi (Dr. Krishnan), was founded and established by Dr. Krishnan, a very well-known and experienced ophthalmologist, who had been practicing medicine in Corpus Christi, Nueces County, Texas since 1997. At that time, Dr. Krishnan was practicing as "Ravi Krishnan, M.D., P.A. d/b/a The Eye Institute of Corpus Christi."

However, in each amount awarded by the arbitrator, the arbitrator awards amounts *to* a party not against a party. For example, for "inappropriate credit card charges," the award states: "[T]he Arbitrator awards Dr. Majka $57,417.91." The award for reconciliation of fourth quarter distribution states: "The Arbitrator awards Dr. Majka $157,243.00." This format is repeated throughout the award, including for awards in favor of Dr. Krishnan.

Assuming Dr. Krishnan's belief stems from the above-quoted provision, we disagree with his interpretation. While the background did identify "Ravinderan Krishnan, M.D., P.A. [d/b/a] The Eye Institute of Corpus Christi," it also clearly identified Dr. Krishnan individually when identifying *who* founded the professional association. Further, the award references testimony from "Dr. Krishnan" individually when explaining the arbitrator's reasoning and findings behind each award.

As Dr. Majka notes, all his pleadings are against Dr. Krishnan individually and the professional association was never alleged to have been a partner in the general partnership. *See id*; *see also* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings . . . ."). Further, the parties' agreement indicated that the purpose of arbitration was to divide the assets of the "Eye Institute." *See Gunnerson*, 477 S.W.3d at 854. Dr. Krishnan's strict interpretation of the arbitration award's introduction of the parties would wholly frustrate the purpose of the arbitration. *See id.* Accordingly, we reject Dr. Krishnan's assertion that the arbitration awards were against "Ravinderan Krishnan, M.D.,

24

P.A. [d/b/a] The Eye Institute of Corpus Christi" instead of Dr. Krishnan individually. Dr. Krishnan's fourth issue is overruled.

## V.     CONCLUSION

We reverse the trial court's award of prejudgment interest and attorney's fees and render a take-nothing judgment for both requests. We vacate the trial court's severance order and dismiss the claim for goodwill damages. *See* TEX. R. APP. P. 43.2(e). We affirm the remainder of the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
21st day of April, 2022.

25