# NO. 12-22-00124-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***THE MORRISON LAW FIRM AND SHELLI MORRISON, APPELLANTS*** | *§* | *APPEAL FROM THE 114TH* |
| ***V.*** | | |
| ***ETX SUCCESSOR TYLER, F/K/A EAST TEXAS MEDICAL CENTER TYLER, ETX SUCCESSOR SYSTEM, F/K/A EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE*** | *§* | *JUDICIAL DISTRICT COURT* |
| ***SYSTEM, APPELLEES*** | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellants The Morrison Law Firm and Shelli Morrison (collectively "Morrison"), appeal from the trial court's judgment confirming an arbitration award in favor of ETX Successor Tyler f/k/a East Texas Medical Center Tyler, ETX Successor System f/k/a East Texas Medical Center Regional Healthcare System, ETX Successor Athens f/k/a East Texas Medical Center Athens, ETX Successor Carthage f/k/a East Texas Medical Center Carthage, ETX Successor Henderson f/k/a East Texas Medical Center Henderson, ETX Successor Jacksonville f/k/a East Texas Medical Center Jacksonville, ETX Successor Rehabilitation Hospital f/k/a East Texas Medical Center Rehabilitation Hospital, ETX Successor Specialty Hospital f/k/a East Texas Medical Center (collectively "ETX"), and Rehabilitation Hospital, LLC, Jacksonville Hospital, LLC, AHS East Texas Health System, LLC, Henderson Hospital, LLC, East Texas Health System, LLC, Tyler Regional Hospital, LLC, Specialty Hospital, LLC, and Athens Hospital, LLC (collectively "Ardent"). In three issues, Morrison argues that we should vacate, correct, or modify the award (1) because the arbitrator exceeded his authority, (2) because the award was procured by fraud or undue means, and (3) for public policy reasons. We affirm.

BACKGROUND

In 2015 and 2016, Morrison and ETX executed written contracts ("the Contracts") under which Morrison would accept for collection unpaid ETX patient accounts ("the Accounts") for hospitals in Tyler, Athens, Henderson, Carthage, and Jacksonville and advance collection expenses. On recovery of payments, Morrison would be reimbursed for these expenses and receive a percentage of the recovery. With some exceptions, that percentage was twenty percent. ETX had the right to terminate the Contracts, in which event Morrison would cooperate with subsequent collectors and receive a quantum meruit payment for pretermination work and expenses, to be determined by a mutually agreed upon mediator. ETX had the right to withdraw any account, in which case Morrison would receive her fee with respect to subsequent payments made because of her collection efforts.

On March 1, 2018, ETX sold substantially all its assets, including the Accounts, to Ardent. Ardent did not assume the Contracts under the purchase agreement. ETX informed Morrison of the sale and stated it was terminating the Henderson, Carthage, and Jacksonville contracts. Subsequently, ETX and Ardent executed a side letter agreement, dated March 2, transferring the Accounts back to ETX. Morrison withdrew her representation in October.

In December, ETX sued Morrison for declaratory judgment regarding the scope of the Contracts. Morrison countersued ETX and filed a consolidated third-party original petition suing Ardent. In February 2020, the parties filed in court an agreement to "submit all disputes, claims or controversies" to "neutral, binding arbitration at JAMS with Judge Harlan Martin." Morrison submitted a demand for arbitration stating claims for breach of contract, quantum meruit, promissory estoppel, money had and received, injunction, an accounting, and tortious interference.

In April 2021, Morrison submitted the following statement of issues for arbitration:

I.    Whether Claimants are entitled to a 20% contingent fee on the sale of the liability accounts from ETX Respondents to Ardent Respondents, when paragraph 7 of the Contingency Agreements specifically says a contingent fee is owed when EXT [sic] Respondents receive payment "from any source" on any and all accounts that had been previously assigned to Claimants for prosecution?

II.    What is the dollar amount that ETX Respondents received on the sale of the liability accounts, when it sold those liability accounts to Ardent Respondents?

III. Whether Ardent Respondents tortiously interfered with Claimants' Contingency Agreements and, if so, what amount of money in damages should Ardent Respondents pay in order to compensate Claimants for that interference?

The final arbitration hearing was held May 4 through 7.

In Judge Martin's final award, he construed the Contracts as entitling Morrison to a contingent fee upon collection of the Accounts from the patient or a responsible third party but not upon a sale of the Accounts. He found that Morrison continued to perform under the Contracts after the asset sale, and ETX paid Morrison all monies due and owed under the Contracts through the date of her withdrawal. Judge Martin further found that Ardent owned the patient account database after the asset sale, had the right to control access to it, justifiably denied Morrison direct access based on concerns that she self-assigned accounts, and responded to Morrison's requests for account information. He found that the evidence supported none of Morrison's claims.

ETX and Ardent filed a motion to confirm the award. Morrison filed a motion to modify, correct, or vacate the award. After hearing the oral arguments of the parties, the trial court confirmed the award. This appeal followed.

## VACATUR

Under the Texas Arbitration Act[1] ("TAA"), "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award." TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2019). An appellate court reviews a trial court's confirmation of an arbitration award de novo; however, our review of the underlying award is extremely deferential. *Dotcom Ltd. Co. v. DP Sols., Inc.*, No. 12-16-00340-CV, 2017 WL 3224887, at *3 (Tex. App.—Tyler July 31, 2017, no pet.) (mem. op.) (citing *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). Judicial review of the arbitration process is limited, and even a mistake of law or fact by the arbitrator in applying substantive law is not a proper ground for vacating an award. *Cambridge Legacy Grp., Inc. v.*

---

[1] The parties agree that the TAA applies. When, as here, an arbitration agreement is silent about whether the Federal Arbitration Act ("FAA") or the TAA applies, and no party asserts that the FAA applies or preempts the TAA, we need not address whether the FAA applies. *See Cedillo v. Immobiliere Jeuness Establissement*, 476 S.W.3d 557, 563 n.3 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The FAA and TAA address the same underlying substantive principles. *Id.* Because the substantive principles applicable to our analysis are the same under both acts, we cite cases decided under the acts interchangeably. *See id.*

***Jain***, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). We should indulge all reasonable presumptions in favor of the award and none against it. ***Delgado***, 95 S.W.3d at 238. The party seeking to modify or vacate an arbitration award bears the ultimate burden of proving the modification or vacatur grounds. ***Roehrs v. FSI Holdings, Inc.***, 246 S.W.3d 796, 804 (Tex. App.—Dallas 2008, pet. denied).

### ARBITRATOR'S AUTHORITY

In Morrison's first issue, she contends that Judge Martin exceeded his authority by (1) deciding a matter not submitted to arbitration, (2) failing to provide a reasoned award regarding her tortious interference claim, (3) failing to provide a reasoned award regarding fifteen other purported claims, and (4) manifestly disregarding the law and issuing an award that was the result of a gross mistake.

**Issue Submission**

Morrison argues that Judge Martin exceeded his authority by finding that ETX paid her all monies due and owed under the Contracts because the issue was not submitted to arbitration. In support of her argument, Morrison asserts that ETX did not dispute that she was owed fees in the event Judge Martin determined she had the contractual right to them for work performed through her withdrawal date. She contends that ETX agreed she had not been paid such fees in full. Morrison acknowledges that she and ETX disagreed as to the specific amount that would compensate her for work she performed, but she distinguishes this disagreement from a claim that if she was entitled to fees through October 17, she had been paid in full. Morrison argues that Judge Martin's finding that she was paid in full, absent the assertion of such a position by ETX and despite ETX's testimony and expert reports showing that she was owed fees through October 17, exceeded the scope of his authority.

ETX denies Morrison's assertions that it (1) did not dispute owing her fees and (2) agreed she was not paid in full. It notes that in its proposed findings and conclusions filed with Judge Martin, it requested a finding that "ETX paid Morrison all sums owed under the contract." ETX further avers that when Morrison submitted post-arbitration proceedings evidence to Judge Martin, ETX responded disputing any fee was owed.

Additionally, ETX cites case law holding that an arbitrator's authority is derived not from what the parties put forth in the arbitration record or submissions but from their agreement to

4

submit to arbitration. It observes that Morrison filed a lawsuit claiming she was owed money under the Contracts, and the parties agreed to submit "all disputes, claims or controversies" between Morrison and the appellees to arbitration. Consequently, ETX contends, Judge Martin had the authority to issue the take nothing award on Morrison's claims that she was owed money under the Contracts. We agree.

If an arbitrator exceeded his powers, the TAA requires the court to vacate the award. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A) (West 2019); **D.R. Horton-Texas, Ltd. v. Bernhard**, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "[T]he court shall modify or correct an award if . . . the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted." TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a)(2) (West 2019).

Texas law strongly favors arbitration of disputes. **Prudential Secs., Inc. v. Marshall**, 909 S.W.2d 896, 898 (Tex. 1995). The arbitrator's powers are derived from the parties' agreement to submit to arbitration. **Nafta Traders, Inc. v. Quinn**, 339 S.W.3d 84, 90 (Tex. 2011). Therefore, we look to the agreement to determine whether the arbitrator had authority to decide the issue. See **id.**; **Bernhard**, 423 S.W.3d at 534. An arbitrator exceeds his authority when he disregards the contract and dispenses his own idea of justice. **Bernhard**, 423 S.W.3d at 534. The authority of an arbitrator is limited to a decision of the matters submitted in the arbitration agreement either expressly or by necessary implication. **Gulf Oil Corp. v. Guidry**, 160 Tex. 139, 143, 327 S.W.2d 406, 408 (1959). An arbitrator does not exceed his authority when the matter he addresses is one that the parties agreed to arbitrate. **Centex/Vestal v. Friendship S. Baptist Church**, 314 S.W.3d 677, 686 (Tex. App.—Dallas 2010, pet. denied).

An arbitrator does not exceed his authority merely because he may have misinterpreted the contract or misapplied the law. **Bernhard**, 423 S.W.3d at 534. "[A]n arbitrator does not exceed h[is] authority by committing a mistake of law, but instead by deciding a matter not properly before h[im]." **Id.** (quoting **LeFoumba v. Legend Classic Homes, Ltd.**, No. 14-08-00243-CV, 2009 WL 3109875, at *3 (Tex. App.—Houston [14th Dist.] Sept. 17, 2009, no pet.) (mem. op.)). The proper inquiry is not whether the arbitrator correctly decided an issue, but whether the arbitrator had authority to decide the issue at all. **Id.**; **Forest Oil Corp. v. El Rucio Land & Cattle Co.**, 518 S.W.3d 422, 431 (Tex. 2017). Generally, "a complaint that the

5

arbitrator decided the issue incorrectly or made a mistake of law is not a complaint that the arbitrator exceeded his powers." *Centex/Vestal*, 314 S.W.3d at 686. Thus, "a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award." *Id.* at 683. We resolve any doubts regarding the scope of what is arbitrable in favor of arbitration. *Id.* at 684.

The record here shows that the issue of whether and how much money was due and owed under the Contracts was submitted in the arbitration agreement. The parties' stipulation for arbitration reads as follows:

> It is stipulated and agreed by the Parties to submit all disputes, claims or controversies by and between [ETX and Ardent] on the one hand, and [Morrison] on the other hand to neutral, binding arbitration at JAMS with Judge Harlan Martin, pursuant to the JAMS Arbitration Administrative Policies and, unless otherwise agreed in writing by the parties, to the applicable JAMS Arbitration Rules and Procedures. The Parties hereby agree to give up any rights they might possess to have this matter by and between [ETX and Ardent] on the one hand, and [Morrison] on the other litigated in a court or jury trial.

The phrase "submit all disputes, claims or controversies" is broad and may encompass a wide range of issues. *See Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 678 (Tex. App.—Dallas 2011, pet. denied) (same conclusion regarding phrase "all claims asserted in the Lawsuit"); *Centex/Vestal*, 314 S.W.3d at 685 (same regarding phrase "[a]ny claim arising out of or related to the Contract"). We construe such broad language as evidence of the parties' intent to be inclusive rather than exclusive. *See Skidmore*, 345 S.W.3d at 678; *Centex/Vestal*, 314 S.W.3d at 685. Such broad agreements have been held to support awards rendered on a variety of grounds, including grounds not specifically argued to the arbitrator. *Skidmore*, 345 S.W.3d at 678 (citing *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (arbitrators did not exceed powers by awarding damages for changed conditions even though issue was not specifically addressed in briefing); *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 34-5 (Tex. App.—Houston [1st Dist.] 1995, no writ) (arbitrators did not exceed powers in determining issue the resolution of which was not expressly demanded because issue was discussed during arbitration proceedings)).

Here, not only was the issue of monies owed under the Contracts encompassed by the arbitration agreement, but Morrison specifically raised it in her arbitration demand. In Count I of

the demand, Morrison alleged breach of contract against ETX, specifically asserting that "(i) [she] had] a binding and enforceable contract(s) with [ETX]; (ii) [ETX] anticipatorily and materially breached the contracts; (iii) as a proximate cause of said breach(es) of contract(s), [she] sustained actual damages." In Count IV, she sought temporary and permanent injunctions ordering ETX to "place into the registry of the Court all disputed funds, which have not yet been invoiced and paid to [Morrison] under the parties' agreements" and "not to alter, destroy, and/or modify any of the payment schedules and other documents, which would reflect amounts to be invoiced and ultimately paid to [Morrison] on accounts germane to the parties' agreements upon which [Morrison has] yet to be paid." In Count V, Morrison sought an accounting to "establish the amounts that are due and owing [Morrison] under the parties' various agreements." Among other relief, she sought actual damages against ETX. Under these circumstances, regardless of whether the issue of monies owed under the Contracts was argued at the final hearing, we cannot conclude that Judge Martin exceeded his powers by determining the issue. *See Nafta*, 339 S.W.3d at 90; *Gulf Oil*, 160 Tex. at 143, 327 S.W.2d at 408; *Skidmore*, 345 S.W.3d at 678.

**Reasoned Award**

Morrison argues that Judge Martin exceeded his authority by failing to provide a reasoned award regarding her tortious interference claim and fifteen other purported claims. Absent an agreement otherwise, an arbitrator issues a "standard award," which announces a result without reasoning or explanation. *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 857 (Tex. App.—Houston [1st Dist.] 2015, no pet.). However, when an arbitration agreement requires that an award be provided in a specific form, such as a "reasoned award," an arbitrator may exceed his powers by failing to provide the award in that form. *Cat Charter, SSC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011); *see also Stage*, 477 S.W.3d at 852, 863 (deciding issue of whether arbitrator provided a "reasoned award" as agreed by parties in preliminary hearing).

Here, the parties expressly adopted the JAMS Rules in the arbitration agreement. JAMS Rule 24(h) provides that

> [t]he Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award.

7

The express adoption of these rules indicates that the parties agreed the award would contain a "concise written statement of the reasons" for the award. *See Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (express adoption of JAMS rules, which authorize arbitrator to determine arbitrability, showed parties agreed to arbitrate arbitrability). We discern no practical difference between an agreement that an award would "contain a concise written statement of the reasons" for it and an agreement that the award would be a "reasoned award." Therefore, we analyze the issue of whether Judge Martin's award adheres to the parties' agreement here under cases construing the definition of a "reasoned award."

Absent an agreed definition, a "reasoned award" is one that is provided with or marked by the detailed listing or mention of expressions or statements offered as a justification of the arbitrator's decision. *Cat Charter*, 646 F.3d at 844; *Stage*, 477 S.W.3d at 859. The detail and specificity required in a "reasoned award" lies between that of a standard award and findings of fact and conclusions of law. *Cat Charter*, 646 F.3d at 844; *Stage*, 477 S.W.3d at 858. The findings and conclusions standard is a relatively exacting standard. *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 820 (5th Cir. 2019). An arbitrator's award is reasoned if it provides greater detail than that of a standard award—that is, it is more than a mere announcement of the decision. *See id.*; *Precision-Hayes Int'l, Inc. v. JDH Pac., Inc.*, No. 02-21-00374-CV, 2022 WL 3913554, at *7 (Tex. App.—Fort Worth Aug. 31, 2022, pet. denied) (mem. op.).

The determination of whether an award is reasoned is a question of form, not substance. *Stage*, 477 S.W.3d at 859. We do not review whether the award is correctly reasoned or well-reasoned. *Id.* Courts have generally been reluctant to vacate an award challenged on the grounds that its form was improper. *Id.* at 855.

Before we address the specific claims about which Morrison complains, we note that Judge Martin's award provides far more than a mere announcement of his decisions. He provided a ten-page award that includes a "Claims" section, a lengthy "Background" section, a three-page "Analysis" section detailing his reasons for the award, a "Findings and Conclusions" section, and an "Award" section. We now address Morrison's specific complaints.

*Tortious Interference*

Regarding Morrison's tortious interference claim, the analysis section explains Judge Martin's reasoning as follows:

> MLF states claims against Ardent for tortious interference with the ETX/MLF Attorney's Fee Contracts and/or their attorney/client relationship. MLF claims Ardent wrongfully caused the termination of the Jacksonville, Henderson and Carthage Attorney's Fee Contracts; denied MLF access to the patient accounts and denied MLF the benefits of its contingent fee agreements.
>
> Following the closing of the Asset Purchase Agreement, Ardent owned and controlled the patient account data base and was privileged to decide for itself who might have access. Ardent was concerned that MLF had "self-assigned" thousands of patient accounts in the months leading up to closing and its denial of MLF's direct access to the patient account data base was appropriate and justified. In fact, the evidence establishes that Ardent cooperated with MLF and was responsive to requests for patient account data base information following the closing of the Asset Purchase Agreement and MLF collected millions of dollars on patient accounts as it benefitted from Ardent's cooperation.
>
> Additionally, Ardent was privileged to hire its own 3rd party collection facility going forward and the evidence does not establish any tortious conduct or quantify any claim of damages resulting from the 3rd party's collection efforts.
>
> All of MLF's claims against Ardent for alleged tortious interference are without merit, unproved and ought be denied.

In Judge Martin's findings and conclusions, he concluded that "MLF failed to prove any actionable claims of tortious interference against Ardent," and "[a]ll claims stated by MLF against ETX and Ardent, are not supported on the evidence presented, are without merit and ought be denied." Because the award does not merely announce Judge Martin's decision regarding Morrison's tortious interference claim in the award but provides detailed statements to justify it, we conclude that Judge Martin did not fail to provide a reasoned award regarding that claim. *See YPF*, 924 F.3d at 820; *Cat Charter*, 646 F.3d at 844; *Precision-Hayes*, 2022 WL 3913554, at *7; *Stage*, 477 S.W.3d at 859.

Nonetheless, Morrison argues that the award does not meet this requirement because Judge Martin "failed to address the legal reason that Ardent would have the legal authority to have their vendor, MRA, working the accounts owned by ETX, who hired Morrison to collect those accounts." This argument complains not that the award fails as a "reasoned award" but that the award is incorrectly reasoned. Such a complaint provides no permissible basis for vacating the award. *See Stage*, 477 S.W.3d at 859; *Cambridge*, 407 S.W.3d at 447. Because the award was provided in the form required by the arbitration agreement with regard to Judge Martin's tortious interference decision, Morrison fails to establish that Judge Martin exceeded his powers in that regard. *See Cat Charter*, 646 F.3d at 843; *Stage*, 477 S.W.3d at 852, 863.

*Other Purported Claims*

Morrison complains that Judge Martin failed to provide any statements or reasons regarding her claims for money had and received, an accounting, and the following purported claims she describes as tortious interference "and/or" breach of contract claims:

1) Interfering in pending litigation, in which Morrison, not MRA, was attorney of record, by contacting and conducting settlement negotiations with opposing counsel. [record citations omitted]

2) Interfering with Morrison's ability to collect the ETX accounts by altering invoices, making patient billing and insurance filings reflecting that Ardent owned the ETX accounts, responding to medical affidavit responses stating Ardent was the owners of the ETX accounts. []

3) Fraudulently filing the ETX accounts with Medicare, against Morrison's advice. []

4) UT/Ardent refusing to provide Morrison with information needed for the collection of liability accounts, even going to the extent to say an account did not have an itemized invoice and one could not be generated. []

5) Changing dates in the ETMC AS400 system regarding, insurance information, filing dates, payments, and adjustments. []

6) Failing to follow the instructions of Morrison and contact carriers and drop insurance claims in a timely manner and/or in the proper order. []

7) Balance billing by either reversing a managed care adjustment or never applying it and applying a liability payments [sic] instead of having the health carrier reprocess as secondary or applying the adjustment and refunding any credit balance to the appropriate party in violation of the Texas Civil Practice and Remedies Code Chapter 146 and is [sic] in breach of the provider contracts, creating legal liability for ETX, Ardent, and Morrison. []

8) Wrongfully applying false adjustments and sending the patient/ carrier/ attorneys a zero balance invoice showing no payment was due, exposing ETX, UT/Ardent, and Morrison to legal liability when the lien was not timely released because Morrison was unaware of the zero balance. []

9) Failing to provide Morrison with the payment reports needed to timely release liens, invoice, update accounts, and appeal insurance denials, as is required under the Morrison/ ETX contract. []

10) Providing Morrison with incorrect information as to in-network provider status, even refusing to correct accounts timely when requested by Morrison, compromising the amounts collectible under the liability claims. []

11) Failing to timely provide medical records on liability accounts when requested in violation of HIPAA. []

12) Sending invoices to patients without the knowledge and consent of Morrison, sometimes applying improper discounts that were collectible from the liability claim, forcing Morrison to honor the discount. []

13) Improperly processing charity on accounts with Morrison and liability claims pending, without the knowledge Morrison [sic], exposing ETX, Ardent, and Morrison to liability. []

Regarding the claims for money had and received and an accounting, Morrison has not met her burden of establishing that statements or reasons were required. *See Roehrs*, 246 S.W.3d at 804. Although JAMS Rule 24(h) requires a statement regarding "each claim," it does not define what constitutes a claim for purposes of the Rule, nor does Morrison contend that the parties agreed on any such definition. Morrison does not contend that she argued the claims for money had and received and an accounting at the final award hearing. Although she asserted money had and received and accounting claims in her arbitration demand, her later-submitted statement of issues omits any reference to the claims. Under these circumstances, indulging all reasonable presumptions in favor of the award and none against it, we decline to conclude that the money had and received and accounting claims constitute "claims" requiring statements and reasoning under Rule 24(h).[2] *See Delgado*, 95 S.W.3d at 238.

The remaining claims, numbered 1 through 13, are addressed in the award. Claims 1, 4, 5, 9, 10, and 11 are specifically addressed. In the portion of the "Analysis" section devoted to Morrison's tortious interference claim, quoted above in its entirety, Judge Martin explains his reasoning regarding (1) third-party collection efforts, which relates to claim number 1, (2) Morrison's data access, which relates to claims 5 and 9, (3) Ardent's cooperation with Morrison, which relates to claims 4, 10 and 11, and (4) the insufficiency of the tortious conduct evidence, which relates to all thirteen claims.

Although the award provides no specific reasoning for claims 2, 3, 6, 7, 8, 12, and 13, Morrison has not shown that any is warranted because she has not shown that the claims were central disputes between the parties. When parties agree that an arbitration award will be in the form of a reasoned award, the arbitrator does not exceed his authority by omitting detailed reasoning regarding issues that were not central disputes between the parties. *See Stage*, 477 S.W.3d at 863. In *Stage*, Stage argued that the award was not a reasoned award because the award simply stated the amount of attorney's fees without specifically addressing any of Stage's

---

[2] We note, nonetheless, that Judge Martin acknowledged the money had and received claim in his "Claims" section.

arguments or explaining the amount. *See id.* at 862. The court of appeals determined that the attorney's fee amount was not a central dispute, noting that the record pertaining to that issue consisted of only 140 pages of a 1,614-page record. *See id.* at 863. Because the issue was not a central dispute, the arbitrator's award of Gunnerson's requested amount of attorney's fees—from which one could conclude the arbitrator rejected each of Stage's arguments—provided sufficient reasoning regarding that issue. *See id.* at 863.

Here, Morrison cites only eighteen pages of the 1,578-page final hearing transcript in support of her argument that claims 2, 3, 6, 7, 8, 12, and 13 warranted reasoning in the award. In those parts of the transcript, Morrison testifies briefly regarding the claims and refers Judge Martin to various documents in evidence without explaining how they support the claims. Morrison made no mention of the claims in either her opening statements or closing brief. *See id.* at 853 (notice and cure defense merited reasoning in award where Stage raised issue in opening and closing statements, both sides questioned Gunnerson about the issue, and issue was relevant under contract). Based on our review, we conclude that the claims were not central disputes. *See id.* at 862-63.

We further conclude that Judge Martin's disposal of the claims in his "Findings and Conclusions" section provides sufficient reasoning regarding them. Therein, he disposes of the claims as follows:

> 7. . . . MLF . . . received all contracted for benefits under the terms of the Attorney's Fee Contracts.
>
> . . . .
>
> 9. MLF failed to prove any actionable claims of tortious interference against Ardent.
>
> . . . .
>
> 11. All claims stated by MLF against ETX and Ardent, are not supported on the evidence presented, are without merit and ought be denied.

Because one could conclude from these disposals that Judge Martin rejected each of Morrison's claims of breach of contract and tortious interference, and claims 2, 3, 6, 7, 8, 12, and 13 were not central disputes, their summary disposals were reasoning enough. *See id.* at 863. Based on our review, we conclude that the award was provided in the form required by the arbitration agreement with regard to each listed claim, and, therefore, Morrison fails to establish that Judge

Martin exceeded his powers in this respect. *See Cat Charter*, 646 F.3d at 843; *Stage*, 477 S.W.3d at 852, 863.

**Manifest Disregard and Gross Mistake**

Within the argument section of Morrison's first issue, she asserts that Judge Martin's "questions and comments throughout, even in the final award, evidence that he knew the law, recognized that the law required a particular result, but simply disregarded the law, or acted arbitrarily and capriciously in his decision, constituting manifestly disregarded [sic] the law and/or the award was the result of a gross mistake." She cites JAMS Rule 24(c), which reads as follows:

> In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator shall be guided by the rules of law and equity that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

We liberally construe Morrison's brief to argue that the parties agreed to expanded judicial review by expressly adopting the JAMS Rules, particularly JAMS Rule 24(c), and that Judge Martin exceeded his authority as limited by JAMS Rule 24(c) by manifestly disregarding the law and issuing an award that was the result of a gross mistake. *See* TEX. R. APP. P. 38.9. Based on the record in this case, we cannot vacate the award on those grounds.

In proceedings governed by the TAA, Section 171.088 provides the exclusive grounds for vacatur of an arbitration award. *Hoskins v. Hoskins*, 497 S.W.3d 490, 497 (Tex. 2016). Common law vacatur grounds such as manifest disregard and gross mistake are generally not grounds for vacatur in such proceedings. *Id.* (manifest disregard); *Gordon v. Nickerson*, No. 03-18-00228-CV, 2019 WL 2147587, at *4 (Tex. App.—Austin May 17, 2019, pet. denied) (mem. op.) (gross mistake). The parties in such proceedings may agree to expanded judicial review or a corresponding limit on the arbitrator's authority, but absent clear agreement to do so, the default under the TAA is restricted judicial review. *See Nafta*, 339 S.W.3d at 101.

The parties' agreement that Judge Martin would be guided by the rules of law agreed on by them or that he deemed most appropriate does not amount to a clear agreement to expand judicial review. *See Forest Oil*, 518 S.W.3d at 432 (no clear agreement to expand review where agreement authorized arbitrators "to award punitive damages where allowed by Texas

13

substantive law"); ***Sanchez v. Doctor's Hosp. at Renaissance, Ltd.***, No. 13-19-00365-CV, 2021 WL 266614 (Tex. App.—Corpus Christi Jan. 21, 2021, no pet.) (mem. op.) (no clear agreement to expand review where arbitration clause provided that "[t]he arbitrator(s) shall apply the internal laws of the State of Texas (without regard to conflict of law rules) in determining the substance of the dispute, controversy or claim and shall decide the same in accordance with the applicable usages and terms of the trade"); ***Midani v. Smith***, No. 09-18-00009-CV, 2018 WL 5660571 (Tex. App.—Beaumont Nov. 1, 2018, pet. denied) (mem. op.) (no clear agreement to expand review where arbitration provision required arbitrator to render decision based on evidence and governed by Texas Rules of Civil Procedure, Texas Rules of Evidence, and statutory and case law); ***Prell v. Bowman***, No. 05-17-00369-CV, 2018 WL 2473850, at *4 (Tex. App.—Dallas June 4, 2018, no pet.) (mem. op.) (no clear agreement to expand review where agreement provided that "[t]he procedures by which arbitration requests are received, hearings are conducted, and awards are made must be in strict conformity with the law"); ***Methodist Healthcare Sys., Ltd., LLP v. Friesenhahn***, No. 04-16-00824-CV, 2017 WL 4518284, at *3 (Tex. App.—San Antonio Oct. 11, 2017, pet. denied) (mem. op.) (no clear agreement to expand review where agreement provided that "[t]he arbitrator will apply the same laws and will be able to grant the same relief as would a judge or jury"). Consequently, restricted judicial review applies, and we cannot grant vacatur on the grounds of manifest disregard or gross mistake. *See Nafta*, 339 S.W.3d at 101; *Hoskins*, 497 S.W.3d at 497; *Gordon*, 2019 WL 214787, at *4.

Because Morrison fails to show that Judge Martin exceeded his powers under any of her theories, she has established no vacatur grounds under Section 171.088(a)(3)(A). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171. 088(a)(3)(A). Accordingly, we overrule her first issue.

### FRAUD OR UNDUE MEANS

In Morrison's second issue, she argues that ETX and Ardent procured the award by concealing, fabricating, and fraudulently misrepresenting evidence.

## Applicable Law

If an arbitration award was obtained by corruption, fraud, or other undue means, the TAA requires the court to vacate the award. *Id.* § 171.088(a)(1). A party seeking to vacate an arbitration award bears the burden of presenting a record that establishes grounds for vacating the award. ***Statewide Remodeling, Inc. v. Williams***, 244 S.W.3d 564, 568 (Tex. App.—Dallas

2008, no pet.). To protect the finality of arbitration decisions, courts must be slow to vacate an award on the ground of fraud. *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.), *cert. denied*, 459 U.S. 990, 103 S. Ct. 346, 74 L. Ed.2d 386 (1982).

To vacate an arbitration award because of fraud, the movant must establish (1) fraud by clear and convincing evidence, (2) the fraud was not discoverable upon the exercise of due diligence before or during the arbitration, and (3) the fraud was material to an arbitration issue. *Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 67 (Tex. App.—El Paso 2010, pet. denied). The elements of fraud are (1) a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent that the other party would act upon it, (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Fraud by nondisclosure is a subcategory of fraud because, where a party has a duty to disclose, nondisclosure may be as misleading as a positive misrepresentation of facts. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). "Undue means" has been defined as immoral, illegal, or bad faith conduct. *See Las Palmas*, 349 S.W.3d at 69.

## Concealment and Fabrication of Account Payment Data

Morrison contends that ETX and Ardent secured the arbitration award through fraud by concealing the Accounts' "ownership, valuation, alteration, and payment information/data." She asserts that this data was "the primary material evidence needed to prosecute and defend Morrison's claims and to determine the proper amount that Morrison is entitled to receive for the accounts that were collected." She acknowledges that ETX and Ardent produced such data in the form of the "UT-2757 spreadsheet," but complains that they did not produce the data "in the form generated by their system," and the spreadsheet was not authenticated.

Morrison offers no evidence showing that the UT-2757 spreadsheet data was falsified except that she requested the data in its original form, ETX and Ardent failed to produce it in that form, Judge Martin ordered Ardent to produce the data, she objected that the UT-2757 spreadsheet data was hearsay evidence, and Ardent failed to produce as a witness the creator of the UT-2757 spreadsheet. Even taking all these facts as true, they do not establish that ETX and Ardent intentionally concealed the true data and falsified the data in the UT-2757 spreadsheet.

15

Ardent's representative testified that it could not produce the data in its original form because it was impossible to rewind every keystroke that occurred since March 2018 and recreate an image of what the data looked like then. Morrison cites no evidence to the contrary and no additional evidence that ETX or Ardent concealed or misrepresented the data. Moreover, the absence of a sponsoring witness for the UT-2757 spreadsheet does not necessarily establish that its contents were falsified. "[A]rbitration proceedings are often informal; procedural rules are relaxed, [and] rules of evidence are not followed." *See Nafta*, 339 S.W.3d at 101. Based on our review, we conclude that Morrison has not shown fraudulent concealment or fabrication by clear and convincing evidence. *See In re FirstMerit Bank*, 52 S.W.3d at 758. Therefore, she fails to establish that the award was obtained by fraud or other undue means. *See Las Palmas*, 349 S.W.3d at 67.

**Concealment and Fraudulent Misrepresentation of Tax Returns**

Morrison contends that ETX obtained the arbitration award through fraud or undue means by concealing a tax return (the "Return") that she discovered after the final hearing through a freedom of information request. According to Morrison, the Return shows that the Accounts had book values of $6,922,623.00 on November 1, 2018 and $550,770.00 on October 31, 2019, and these values conflict with ETX's and Ardent's position that the Accounts had zero book value at the time of the asset sale. ETX acknowledges that it did not produce the Return. But, according to ETX, it produced all relevant tax returns for the period requested, and the accounts receivable reflected in the Return are not the Accounts but accounts receivable of entities with which Morrison had no contracts, such as an ambulance company and a purchasing cooperative. In response, Morrison attempts to show that the accounts receivable in the Return are the Accounts by citing transcript pages where, according to her, ETX testified it sold all its accounts receivable to Ardent and the only accounts receivable transferred back to ETX in the side letter agreement were the Accounts. The cited pages contain no such testimony. Without evidence that the accounts receivable reflected in the Return are the Accounts, Morrison has not carried her burden of proving by clear and convincing evidence that ETX's nondisclosure of the Return was fraudulent. *See In re FirstMerit Bank*, 52 S.W.3d at 758.

Moreover, even if the nondisclosure was fraudulent, Morrison fails to establish vacatur grounds. Section 171.088 does not mandate vacatur on every showing of fraud or undue means but only if "the award was obtained by" fraud or other undue means. TEX. CIV. PRAC. & REM.

16

CODE ANN. § 171.088(a)(1). We read this language as requiring a nexus between the alleged fraud and the basis for the arbitrator's decision. *See Forsythe Intern., S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990) ("award was procured by" language in 9 U.S.C. § 10(a) requires nexus between fraud and decision). Such a nexus may exist where fraud prevents the arbitrator from considering a significant issue to which it otherwise lacks access. *Id.* However, where the arbitrator hears the allegation of fraud and rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory vacatur basis is absent. *Id.*

The record indicates that Judge Martin heard the allegation of fraud regarding the book value of the Accounts and rested his decision not on the Accounts' book value but on his interpretation that the Contracts did not entitle Morrison to a contingent fee incident to a sale of ETX assets. Thus, Morrison fails to show that "the award was obtained by" any alleged fraud or other undue means. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(1); *Forsythe*, 915 F.2d at 1022. Because Morrison fails to establish that the award was obtained by fraud or undue means, she has established no vacatur grounds under Section 171.088(a)(1). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171. 088(a)(1). Accordingly, we overrule her second issue.


## PUBLIC POLICY

In Morrison's third issue, she argues that we should vacate, correct, or modify the award based on public policy considerations, namely, (1) the encouragement of reporting illegal activity and (2) the curtailment of profit gained through fraud against the public, discovery abuse, and fabrication and concealment of evidence. She asserts no Section 171.088 or 171.091 grounds to support such vacatur but cites *Black v. Shor*, 443 S.W.3d 154 (Tex. App.—Corpus Christi 2013, pet. denied) for the proposition that "an arbitration award cannot be set aside on public policy grounds except in an 'extraordinary case' in which the award 'clearly violates carefully articulated, fundamental policy.'" *Black*, 443 S.W.3d at 167 (citing *Delgado*, 95 S.W.3d at 239). The court in neither *Black* nor *Delgado* resolved the issue of whether the TAA permits vacatur on the common-law ground of public policy, but more recent caselaw resolves the issue against permission of common-law vacatur grounds.

In *Delgado*, the Texas Supreme Court acknowledged case law wherein courts vacated awards on public policy grounds, observed that the parties in neither of those cases nor the one at

bar raised the issue of whether such grounds were preempted by statutes governing arbitration, and assumed without deciding that the grounds were not preempted. *Delgado*, 95 S.W.3d at 237-38. In *Black*, the court acknowledged that public policy is not listed as a vacatur ground under the TAA but, for purposes of its opinion, assumed without deciding that it was a valid vacatur ground. *Black*, 443 S.W.3d at 167. But the supreme court has since decided that in proceedings governed by the TAA, Section 171.088 provides the exclusive grounds for vacatur of an arbitration award. *Hoskins*, 497 S.W.3d at 497. Consequently, Morrison's assertions that the award violates public policy are not valid bases for vacatur. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.087, 171.088, 171.091. We accordingly overrule Morrison's third issue.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 8, 2023.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 8, 2023**

**NO. 12-22-00124-CV**

**THE MORRISON LAW FIRM AND SHELLI MORRISON,**
Appellants
V.
**ETX SUCCESSOR TYLER, F/K/A EAST TEXAS MEDICAL CENTER TYLER, ETX SUCCESSOR SYSTEM, F/K/A EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM,**
Appellees

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 18-2870-B)

THIS CAUSE came to be heard on the appellate record, oral argument, and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **THE MORRISON LAW FIRM AND SHELLI MORRISON** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*